FRANK O. BUTLER II, Plaintiff-Appellant, v. MAYER, BROWN AND PLATT, Defendant-Appellee.

First District (3rd Division)   No. 1—97—4639

Opinion filed November 25, 1998.—Rehearing denied December 21, 1998.

Torshen, Spreyer, Garmisa & Slobig, Ltd., of Chicago (Jerome H. Torshen and James K. Genden, of counsel), for appellant.

Baker & McKenzie, of Chicago (William Joseph Linklater, Michael A. Pollard, and Anthony G. Tamato, of counsel), for appellee.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Plaintiff Frank Butler appeals the trial court's dismissal of his legal malpractice suit against defendant Mayer, Brown & Platt under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1996)). The trial court ruled that plaintiff's suit was barred by the two-year statute of limitations for claims against attorneys. See 735 ILCS 5/13—214.3(b) (West 1996).

Plaintiff makes two arguments on appeal: (1) the statute of limitations did not begin to run until the appellate court affirmed the adverse judgment against him in the case defendant was hired to try; and (2) even if the statute of limitations began to run when the trial court entered judgment, defendant is estopped from invoking the statute of limitations because of postjudgment reassurances. We find that a question of fact remains about when the statute of limitations began to run and remand for further proceedings.

Plaintiff's verified amended complaint alleges the following. In July 1986, plaintiff and his brother and sister signed an agreement to govern the division of shares they had inherited in six corporations. In a separate shareholder agreement, they created a "put" procedure: each shareholder could require the other shareholders to either purchase the interests of the shareholder who exercised the put or sell the corporation. In April 1989, plaintiff exercised a put for one of the corporations. Plaintiff's brother and sister elected to buy plaintiff's interest, but they failed to do so.

Plaintiff sued his brother and sister to enforce the shareholder agreement. Shortly after a complaint was filed, he hired defendant to represent him in the case. Plaintiff's complaint sought a single remedy: specific performance under the shareholder agreement. The complaint was never amended to add a breach of contract claim for damages. The trial court first granted summary judgment for plaintiff on his right to enforce specific performance of the shareholders' agreement, but set the matter for trial to determine: (1) whether the liability of plaintiff's brother and sister was joint and several; and (2) what the net fair market value of plaintiff's shares was.

Plaintiff alleges that at trial Mayer, Brown and Platt relied on the testimony of only one expert, who had advised the firm that some matters on which he was being asked to testify were outside his expertise.

On January 15, 1993, the trial judge ruled that plaintiff was not entitled to specific performance because he had failed to prove the net fair market value of the shares by clear and convincing evidence. The trial court opined on the record that, given the heightened standard applicable to specific performance cases, a breach of contract suit, where "clear and convincing" proof of damages is not required, might have been more appropriate. But the court suggested that plaintiff. could still seek damages under a breach of contract theory.

Plaintiff then sought leave to amend his complaint to add a breach of contract claim. On February 19, 1993, the trial court granted this motion. Plaintiff's brother and sister moved to reconsider. At a June 3, 1993, hearing on the motion to reconsider, the trial court said that it found it "inexplicable *** why there was not a second count filed for breach of contract in addition to specific performance" in the original complaint and noted that allowing plaintiff to amend would create a "grossly inefficient result" because there had been a lengthy trial on the specific performance count involving the same set of facts. The trial court then vacated the February 19, 1993, order and denied plaintiff leave to amend the complaint. The trial court later awarded attorney fees to plaintiff's sister and entered a final judgment on February 1, 1994. The judgment was appealed and affirmed on September 13, 1995. *Butler v. Kent*, 275 Ill. App. 3d 217, 655 N.E.2d 1120 (1995).

Plaintiff alleges that he learned of the January 15, 1993, order through the press, before the law firm sent a copy of the trial court's opinion by facsimile. The firm did not tell plaintiff about the judge's oral comments or give plaintiff a copy of the transcript. Attorneys from the firm called plaintiff within a few days and told plaintiff that the court erred and that he would likely prevail on appeal.

Defendant continued to represent plaintiff on appeal. Plaintiff alleges that he spoke with his attorney at the firm at least six times between January 15, 1993, when specific performance was denied, and the date of the appellate court decision. His attorney repeatedly expressed confidence, orally and in writing, that plaintiff would prevail on appeal. Plaintiff alleges that the firm relayed the same opinion through "friends with whom [the firm] regularly communicated about the case." Plaintiff further alleges that the law firm told plaintiff "he would be unable to obtain the services of any other attorneys to represent him [in the case] because *** the law firm would be able to depict [plaintiff] in a manner which would dissuade other attorneys from agreeing to represent and advise [plaintiff]."

Plaintiff filed his complaint against defendant on March 7, 1997, three years and one month after the final trial court judgment. One year and seven months elapsed between the final judgment of the trial court and the appellate affirmance. We address the lapse of time between the trial court judgment and the appellate affirmance later in this opinion to dispose of plaintiff's claim of estoppel.

Plaintiff's complaint alleges legal malpractice, breach of contract and breach of fiduciary duties. The complaint was later amended. The firm moved to dismiss the verified amended complaint under section 2—619 of the Code of Civil Procedure, arguing that plaintiff's claims were barred by the two-year statute of limitations for claims against attorneys. 735 ILCS 5/13—214.3(b) (West 1996). The trial court granted the motion. The court ruled that plaintiff reasonably should have known that he was injured and that the injury was wrongfully caused when final judgment was entered on February 1, 1994. The trial court also ruled that the firm was not estopped from relying on the statute of limitations because the alleged reassurances were opinions, not intentional misrepresentations of fact.

■ In ruling on a section 2—619 motion, a court must accept as true all well-pleaded facts in plaintiff's complaint and all inferences that can reasonably be drawn in his favor. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 85, 651 N.E.2d 1132 (1995). Dismissal is proper when there are no genuine issues of material fact and dismissal is proper as a matter of law. See *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17, 619 N.E.2d 732 (1993). We review a section 2—619 dismissal *de novo*. *Kedzie*, 156 Ill. 2d at 116.

■ A legal malpractice suit must be brought within two years from the time when the plaintiff "knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13—214.3(b) (West 1996). In *Garcia v. Pinto*, 258 Ill. App. 3d 22, 629 N.E.2d 103 (1993), we held that "[s]ection 13—214.3 statutorily accepts the discovery rule which serves to trigger a statute of limitations period at the time the injured party knows or reasonably should know that he has suffered an injury which was wrongfully caused." *Garcia*, 258 Ill. App. 3d at 24. When a plaintiff should have discovered his injury is ordinarily a question of fact, and judgment as a matter of law should only be entered where the undisputed facts allow for only one conclusion. *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 250, 633 N.E.2d 627 (1994); *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171, 421 N.E.2d 864 (1981).

■ The trial court held that the undisputed facts supported only one conclusion: that plaintiff knew or should have known no later

than February 1, 1994, that he was injured and his injury was wrongfully caused. Plaintiff argues that he could not have known he had been injured because "he only faced a possibility of damages which could be eliminated by a reversal" until *Butler v. Kent* was affirmed on appeal. But we rejected this argument in *Belden v. Emmerman*, 203 Ill. App. 3d 265, 270, 560 N.E.2d 1180 (1990), and in *Zupan v. Berman*, 142 Ill. App. 3d 396, 399, 491 N.E.2d 1349 (1986). We held a plaintiff is injured at the time an adverse judgment is entered, even if the amount of damages is uncertain or the judgment might be later reversed. *Belden*, 203 Ill. App. 3d at 270; *Zupan*, 142 Ill. App. 3d at 1352. We noted in *Belden* that damages result from an adverse judgment whether or not it is reversed on appeal. *Belden*, 203 Ill. App. 3d at 270. For instance, plaintiff here was assessed attorney fees and hired another attorney to represent him in "anticipation of *** litigation *** to enforce the judgment." But as plaintiff notes, our inquiry does not end with the determination that plaintiff should have known of his injury. We must also address plaintiff's argument that he did not know his injury was wrongfully caused.

Plaintiff argues that even if he was on notice of injury because of the judgment, he could not have known that the adverse ruling by the trial court was wrongfully caused until the appellate court "disproved the law firm's consistent assurances that the trial court, not counsel, had erred." Alternatively, plaintiff argues that a question of fact remains about when he knew or should have known his injury was wrongfully caused.

■ As plaintiff stresses, we held in *Goodman v. Harbor Market, Ltd.*, 278 Ill. App. 3d 684, 689-90, 663 N.E.2d 12 (1995), that a layperson is presumptively unable to discern malpractice as it occurs. Yet a professional opinion that legal malpractice has occurred is not required before a plaintiff is charged with knowing facts that would cause him to believe his injury was wrongfully caused. *Cf. Dancor International, Ltd. v. Friedman, Goldberg & Mintz*, 288 Ill. App. 3d 666, 673, 681 N.E.2d 617 (1997). The discovery rule "delay[s] commencement until the person has a reasonable belief that the injury was caused by wrongful conduct, thereby creating an obligation to inquire further on that issue." *Dancor*, 288 Ill. App. 3d at 673. "At some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. *** [T]his is usually a question of fact." *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 416, 430 N.E.2d 976 (1981). See also *Betts v. Manville Personal Injury Settlement Trust*, 225 Ill. App. 3d 882, 896, 588 N.E.2d 1193 (1992).

We note that in *Belden* and *Zupan*, the trial court judgments marked the point when the plaintiffs should have known they were injured and that the injury was wrongfully caused. But *Belden* and *Zupan* do not hold that an adverse judgment alone always signals a client that legal malpractice has occurred. In *Belden*, the client had reason, beyond the judgment itself, to suspect negligence—the defendant firm told the client it had a conflict of interest, withdrew as counsel, and yet continued to advise the client. See *Belden*, 203 Ill. App. 3d at 267. And in *Zupan*, the client admitted that she was "reasonably aware that defendant had wrongfully caused her injury at the time judgment was entered." *Zupan*, 142 Ill. App. 3d at 399.

The adverse ruling here was the trial court's denial of plaintiff's motion for leave to amend his complaint. Whether a plaintiff may amend his complaint is a matter within the discretion of a trial court. See *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273-74, 586 N.E.2d 1211 (1992). The trial court's exercise of that discretion, standing alone, does not suggest that the ruling was caused by legal malpractice rather than the merits of plaintiff's case.

The trial court did orally suggest, at the hearing on damages and at a hearing on plaintiff's motion for leave to amend, that failure to amend the complaint earlier was fatal to plaintiff's case. But plaintiff alleges that he was not in court and that the firm did not tell him about the judge's comments. We do not know when plaintiff first learned of those comments. Plaintiff alleges that firm attorneys then assured plaintiff that the trial court had erred.

Further, plaintiff alleged that Mayer, Brown and Platt was negligent, not only for failing to amend the complaint, but for using an expert witness that the firm knew was not qualified to answer the questions necessary to establish net fair market value at the hearing on damages. Nothing in the January 15, 1993, order or the February 1, 1994, judgment signalled to plaintiff that the firm called an expert witness that it knew lacked the expertise to establish plaintiff's damages.

Mayer, Brown and Platt argues that plaintiff should have known his injury was wrongfully caused when he consulted new attorneys in 1993. Plaintiff relies on the affidavit of Lee Abrams, one of the firm's attorneys. The affidavit states:

> "5. *** [Plaintiff] retained the services of two new attorneys to provide advice and counsel in connection with the Litigation, Frederic Brace of Chicago and Larry Mesches of Palm Beach, Florida.
>
> 6. In October 1993, Mr. Brace met with [defendant's] attorneys *** to review and discuss the status of the Litigation, [defendant's] performance, the trial court decision, the general strategy and Butler's options going forward.

7. From late 1993 through the prosecution of the appeal, Mr. Mesches from time to time reviewed and commented on defendant's work and offered his views on how defendant should proceed with the Litigation."

The affidavit does not specify that either attorney reviewed work performed before January 15, 1993, when the alleged negligent conduct occurred. The affidavit can be read as consistent with Butler's affidavit, which states that the attorneys were hired to assist Butler in matters arising after the January 15, 1993, order, such as the fee dispute between Butler and the firm, the firm's work on subsequent motions and on the appeal, and the separate judgment collection proceedings in Florida.

■ We detect several points in time where a fact finder could conclude plaintiff should have known his injury was wrongfully caused. But the facts are not undisputed and do not point to only one conclusion. Since the facts could support more than one conclusion, we must remand for further proceedings. See *Jackson Jordan*, 158 Ill. 2d at 251.

Plaintiff also argues that the firm is estopped from relying on the statute of limitations. If, after a trial, a jury finds the statute of limitations did not commence until the appellate court affirmance and plaintiff's suit was timely filed, plaintiff's estoppel argument need not be addressed. But if the jury finds the statute of limitations began to run more than two years before plaintiff filed suit, plaintiff's estoppel argument becomes relevant. Because the issue may arise again on remand, we address it here. Plaintiff alleges that the firm caused plaintiff to delay filing a malpractice suit by concealing the trial court's oral comments at the January 15, 1993, hearing, reassuring plaintiff that an appeal would be successful, and threatening to interfere with plaintiff's efforts to obtain new counsel.

*Jackson Jordan* makes clear that the continuous reassurances of one's lawyer after an adverse result may toll the statute. *Jackson Jordan*, 158 Ill. 2d at 253. But equitable estoppel is unavailable to plaintiff because he failed to sue within a reasonable time after defendant stopped offering the reassurances that plaintiff alleges lulled him into not filing suit.

■ Under Illinois law, equitable estoppel does not give a plaintiff the entire limitations period measured from the date the defendant discontinues the conduct that lulled the plaintiff into inaction. Equitable estoppel will not apply if the defendant's conduct ended within ample time to allow a plaintiff to avail himself of his legal rights under the statute of limitations. *Barratt v. Goldberg*, 296 Ill. App. 3d 252, 259, 694 N.E.2d 604 (1998); *Serafin v. Seith*, 284 Ill. App. 3d 577, 589,

672 N.E.2d 302 (1996). We have held that as little as six months remaining in a statute of limitations period is "ample time" for a plaintiff to bring suit. See *Smith v. Cook County Hospital*, 164 Ill. App. 3d 857, 866, 518 N.E.2d 336 (1987). See also *Serafin*, 284 Ill. App. 3d at 588-89 (plaintiff had "ample time" to file suit where approximately six months remained under statute of repose). We believe the logical extension of this rule is that where ample time does not remain under a statute of limitations, the plaintiff will be allowed a reasonable period to bring suit. To allow the full limitations period would be to inconsistently allow a plaintiff less time when "ample" time remains in the limitations period and significantly more time when "ample" time does not remain.

Plaintiff does not dispute that any conduct that caused his delay in filing suit ended on September 15, 1995, when *Butler v. Kent* was decided by this court. Almost five months remained under the statute of limitations measured from the date of the trial court judgment. Yet plaintiff waited 18 months to file suit. We cannot conclude under *Smith* and *Serafin* that plaintiff's 18-month delay was reasonable.

Reversed and remanded.

McNULTY and LEAVITT, JJ., concur.