9 December 1999

No. 2--98--1459 

________________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_______________________________________________________________________________

PROFIT MANAGEMENT DEVELOPMENT,   ) Appeal from the Circuit Court 

INC., n/k/a Petefish ) of Lake County.

Management, Inc., LESLIE G.      )

BEHREND, and NORMA A. BEHREND, )

                                 )

Plantiffs-Appellants and    )

Cross-Appellees,            )

                                 )

v.                          ) No. 96--L--70

                                 )

JACOBSON, BRANDVIK AND ANDERSON,   )

LTD., and  CRAIG E. ANDERSON,   )

              )

                                 ) Honorable

Defendants-Appellees and    ) Charles F. Scott,

Cross-Appellants.           ) Judge, Presiding.

_______________________________________________________________________________

JUSTICE THOMAS delivered the opinion of the court:

The plaintiffs, Profit Management Development, Inc. (Profit Management), now known as Petefish Management, Inc., Leslie G. Behrend (Mr. Behrend), and Norma A. Behrend (Mrs. Behrend), filed this legal malpractice lawsuit against the defendants, Jacobson, Brandvik & Anderson, Ltd. (JB&A), and Craig E. Anderson, alleging that the defendants negligently represented the plaintiffs in connection with an employment dispute between the plaintiffs and one of the plaintiffs' employees.  Following a jury verdict in favor of the plaintiffs for $41,000, the trial court entered judgment on their behalf for that amount.  Thereafter, both the plaintiffs and the defendants filed posttrial motions.  The trial court denied both posttrial motions.  The plaintiffs appeal and the defendants cross-

appeal. 

The record reveals that Mr. Behrend was the president of Profit Management and Mrs. Behrend was the treasurer and secretary.  In 1980, the plaintiffs retained the services of JB&A, a Chicago law firm, to revise the plaintiffs' employment contracts for its sales personnel.  Anderson and another partner from JB&A made that revision.  In 1984, Profit Management entered into a written employment contract with Dean Baughman, one of the plaintiffs' salesmen.  Under that contract, Baughman was to be paid a base salary of $35,000 per year, plus a 10% commission of gross sales that he initiated, minus his expenses.  The contract prohibited modifications unless they were in writing and signed by both parties.

Leslie Behrend testified that Profit Management sent a letter to Baughman in March 1988 attempting to amend his commission schedule.  According to Mr. Behrend, Baughman did not object to the letter, and he received and accepted commissions based upon the modified formula.

Dean Baughman testified that he did not agree to the modification because the new method of calculation under the modification would have reduced his commission 10 times.  He testified that he specifically told Mrs. Behrend that the change was totally unacceptable.  Thereafter, Baughman noticed inconsistencies in his commission checks and by November 1988 he was making continuous inquiries about them.

On April 18, 1989, Profit Management sent Baughman a letter terminating his employment.  The letter acknowledged that Profit Management owed Baughman commissions of $20,719.64.  On the same day that the letter was sent, Mr. Behrend sent a letter to a private investigator asking him to determine whether Baughman had had any employment outside of Profit Management in violation of a provision contained in the employment agreement prohibiting outside employment.  On June 30, 1989, Mr. Behrend sent a letter to James A. Brandvik, a partner at JB&A, which stated that he had dismissed Baughman for "economic reasons" and that, although he did not have all the proof yet, he believed Baughman had been working for a competing consulting firm.  Along with the letter, Mr. Behrend sent a copy of the private investigator's June 28, 1989, report on Baughman's activities.  The letter to JB&A concluded by stating, "Let's have some more fun, Jim!"

On July 17, 1989, Profit Management sent Baughman a letter telling him that it would not pay him any commissions.  On January 5, 1990, Baughman, through his attorney, sent a demand letter to Profit Management.  Profit Management then sent that letter to JB&A, stating that it was "forwarding it to you for counsel and action decision.  Please let us hear from you."  On January 26, 1990, JB&A sent Baughman and his attorney a letter stating that Profit Management was denying the claim based on a provision in the parties' contract that, in the event of a violation of its terms by the employee, the employee would forfeit any unpaid bonuses or incentive compensation.  On February 15, 1990, Baughman filed a breach of contract action against Profit Management in the circuit court of Cook County.  Paragraph 9 of that complaint stated:

"In early 1988, [Profit Management] attempted to alter the terms of the employment agreement signed by the parties, but this was never agreed to by Baughman, and no written modification was agreed to or signed by the parties, as required under the terms of the employment agreement, Section 11."

On May 29, 1990, Brandvik filed an answer of behalf of Profit Management admitting paragraph 9 of Baughman's complaint.  The answer included an affirmative defense, alleging that Baughman was not entitled to commissions because he violated the forfeiture provisions of the parties' contract.  In their answer, Brandvik and JB&A did not include an affirmative defense based on any attempted modification of the contract by Profit Management in 1988, nor did they file a counterclaim against Baughman for breach of contract.

After some discovery in the case, Baughman revised his demand claiming that he was entitled to $143,801.76 in commissions because he had not agreed to the 1988 modification.  Thereafter, on April 30, 1991, Baughman made a written settlement offer of $35,000.  According to Mr. Behrend, JB&A faxed the settlement offer to his office, but he did not see it because he was out of town at the time.  He testified that he never discussed the settlement offer with anyone from JB&A, nor did JB&A advise him as to the cost of settlement in relation to the cost of defending the suit.  However, on cross-examination, he acknowledged that he had previously given sworn testimony indicating that his attorney had told him about the $35,000 settlement but that he was "miles apart in agreement."  On November 7, 1991, Mrs. Behrend wrote Brandvik a letter stating in part:

"I get the feeling that your firm feels that we owe the man money for commission when he was not living up to the contract which your firm wrote.  I don't want to lose this case.  I know that nothing is 'for sure', but I do dislike always being the patsy for employees who sap my money and don't earn it."

On November 20, 1993, Profit Management terminated JB&A, claiming that the firm was not ready for trial of the case, which was scheduled for January 24, 1994.  On November 30, 1993, the plaintiffs hired Joe Marconi of Johnson & Bell as substitute counsel.  Mr. Behrend admitted that Marconi reviewed the file in the case and wrote him on December 17, 1993, that the case would be difficult to defend because of the admission to paragraph 9 of Baughman's complaint.  In that letter, Marconi informed the Behrends that he had attempted to amend their answer to paragraph 9.  The amendment was denied by the trial court on December 21, 1993.  Mr. Behrend incurred attorney fees in connection with Johnson & Bell's efforts to amend the answer and affirmative defenses.  He was billed for those services on December 21, 1993.  Mr. Behrend admitted that he received that bill on January 21, 1994, and that he was personally responsible for the attorney fees billed by Johnson & Bell in connection with the case.  Mr. Behrend acknowledged that Marconi told him that the attorney fees were incurred "to clean up what the Brandvik law firm did that was wrong."

On January 18, 1994, the trial court granted Baughman's motion to dismiss the affirmative defense based on the forfeiture provision of the parties' agreement, finding that it constituted a penalty and was therefore unenforceable as a matter of law.  At that time, the trial court further made various rulings on previously filed motions 
in
 
limine
.  In that regard, the court ruled that Profit Management could not present any evidence based on the forfeiture provision or with respect to the claim that the contract had been modified in 1988.  At that time, the trial judge suggested that Profit Management take a judgement against itself for $75,000.  Michael Lynch, an associate at Johnson & Bell, advised the Behrends that they should not allow a judgment to be taken against the corporation for that amount because it would not protect them from personal liability in a subsequent case filed against them individually and because the amount suggested did not include attorney fees.  Also on January 18, 1994, Baughman filed an emergency motion to sue the Behrends personally after he learned that the corporation had insufficient assets to satisfy any judgment that might be obtained.  The trial court denied that motion on January 20, 1994.  

The trial of the Cook County case commenced on January 24, 1994.  The answer filed by JB&A to paragraph 9 of Baughman's complaint was used at trial as evidence that Baughman never agreed in 1988 to a modification of the method for computing commissions.  A jury returned a verdict in favor of Baughman for $145,000.  After adding attorney fees, the trial court entered a judgment in favor of Baughman for $218,992.04.

On April 18, 1994, Baughman filed a complaint in federal district court against Mr. and Mrs. Behrend, individually, alleging fraud and tortious interference with contract in their refusal to pay Baughman the commissions that were allegedly owed to him.  With respect to the fraud claim, Baughman was required to prove by clear and convincing evidence that the Behrends acted fraudently.  With respect to the tortious interference with contract claim, Baughman had to show that the Behrends interfered with his contract either for their own personal gain or to harm Baughman.

While the federal lawsuit was pending, the plaintiffs filed the present malpractice action against JB&A in the circuit court of Lake County on January 24, 1996.  The plaintiffs' complaint alleged that JB&A breached the professional standard of care by not advising the plaintiffs of the risk of not paying Baughman's claim, by failing to advise them that the forfeiture provision of the Baughman contract was unenforceable, by filing an answer to Baughman's Cook County case admitting the allegations of paragraph 9 of the complaint, by failing to file a counterclaim against Baughman for breach of contract, by failing to advise the plaintiffs to settle when the $35,000 offer was presented, by failing to properly advise the plaintiffs of the risk of relying on the oral modification of the contract, and by failing to advise the plaintiffs of the cost of defense in relation to the settlement offer.   The defendants in the present case filed an answer on June 28, 1996, and on November 6, 1996, they filed their first affirmative defense, alleging that the plaintiffs' cause of action was time barred by the applicable statute of limitations for legal malpractice actions contained in section 13--214.3(b) of the Code of Civil Procedure (the Code) (735 ILCS 5/13--214.3(b) (West 1998)). 

In the federal case, the Behrends were precluded from presenting any evidence with respect to the attempted modification of Baughman's contract in 1988.  Additionally, the amount of the Cook County judgment was allowed into evidence and was the only evidence of damages allowed.  Baughman presented evidence in the federal case that the Behrends understated his commissions, hired a private investigator to investigate him the same day he was terminated, and personally took $50,000 out of their corporation after the Cook County judgment but claimed to have no assets to pay the judgment.  While the jury was deliberating, the Behrends settled the federal case for $400,000.  The settlement occurred sometime in October 1997.  Thereafter, on November 7, 1997, the defendants in the present action were allowed leave to file a second affirmative defense, alleging that the plaintiffs fraudulently refused to pay Baughman his commission and, therefore, the defense of unclean hands should bar the plaintiffs from recovery in the Lake County case as a matter of law.

On January 15, 1998, the plaintiffs filed a third amended complaint in the Lake County case.  The defendants filed a combined section 2--615 and 2--619 (735 ILCS 5/2--615, 2--619 (West 1998)) motion to dismiss that complaint based on the issues of the statute of limitations, unclean hands, standing, and proximate cause.  The trial court denied the defendants' motion to dismiss.  The defendants did not file an answer to the plaintiffs' third amended complaint.

The plaintiffs then filed a motion for leave to file a verified fourth amended complaint.  Paragraph 42 of the plaintiffs' complaint alleged the following new allegation:

"JB&A's counsel in this action, as agents of the defendants, without the consent of the plaintiffs, turned over to Robert Bloch, counsel for Baughman in the federal court case, confidential documents of plaintiffs, including a letter dated June 30, 1989 from plaintiffs to Brandvik, their lawyer, and the transcript of the discovery deposition of Leslie Behrend taken in this action but not filed with the Clerk of this Court, which documents were used in final argument by Bloch to support his contention that the activities of Behrends in not paying Baughman were malicious."

In his deposition, Mr. Behrend stated that one of his successor attorneys from Johnson & Bell told him that any judgment Baughman obtained would have value only in the fact that Baughman would be able to place it on the bathroom wall and look at it when he "took a leak."  The June 30, 1989, letter was referred to in the deposition.  Both the letter and statement from the deposition were apparently used by Baughman's attorney in the federal lawsuit in support of the fraud claim.

The plaintiffs further alleged in their fourth amended complaint that the allegations contained in paragraph 42 constituted a breach of the professional standard of care in that the documents were confidential and protected by the attorney-client privilege.  The defendants objected to paragraph 42 of the complaint.  Following a hearing on the matter, the trial court struck paragraph 42, finding that the discovery deposition of Mr. Behrend and the letter of June 30, 1989, became public documents upon the taking of the deposition and, therefore, Daniel Konicek, the defendants' attorney in the present case, had the right to give a transcript of the deposition to attorney Bloch for use in the federal case.  The trial court allowed the remainder of the plaintiffs' fourth amended complaint to be filed on August 12, 1998, and gave the defendants until August 17, 1998, to file an answer.

A jury trial in the case commenced on August 17, 1998, without the defendants having their answer on file.  Following the presentation of the plaintiffs' case in chief on August 20, 1998, the plaintiffs filed a motion for a directed verdict and the defendants moved for leave of court to file their answer and affirmative defenses.  The trial court denied the plaintiffs' motion for a directed verdict and allowed the defendants to file their answer and previously filed affirmative defenses.  In so doing, the court noted that it had discretion to allow the late filing, that the plaintiffs' fourth amended complaint was filed eight days earlier, and the defendants' answer was three days late.  He noted that the affirmative defenses were previously pleaded and did not take the plaintiffs by surprise.  The defendants then moved for a directed verdict based on the statute of limitations, and the trial court reserved ruling on the matter until the trial was completed.

In the plaintiffs' case in chief, attorney Marconi testified that the defendants breached the standard of care by failing to advise the plaintiffs that the forfeiture clause was unenforceable, by admitting the allegation in paragraph 9 of Baughman's complaint, by failing to timely amend the admission, and by not filing an affirmative defense that Baughman agreed to the 1988 modification.  He further testified that he had discussed with the Behrends their "exposure" before the Cook County case was tried.

Also in the plaintiffs' case in chief, attorney George Collins testified that the defendants breached the standard of care by sending a letter on January 25, 1990, denying Baughman's claim, by not advising the Behrends to pay Baughman's $20,000 claim, by not insisting that the Behrends settle the case for $35,000, and by not explaining the potential that the Behrends could be held personally liable.  He further testified that the damages suffered by the Behrends in settling the federal case for $400,000 were causally related to JB&A's breaches of the standard of care.

Attorney Neil Stern testified on behalf of the defendants that a reasonable legal basis existed for inserting the forfeiture clause in Baughman's contract and that it was not a breach of the standard of care to insert it.  He further testified that the January 25, 1990, letter denying the commission claim was clearly not a breach of the standard of care because the Behrends wanted to deny the claim.

Attorney James Convery testified that JB&A did not violate the standard of care in the case.  He specifically noted that there was no violation of the standard of care by JB&A with respect to the communications between Brandvik and the Behrends, with respect to the January 25, 1990, letter, with respect to advice on personal liability, or in sending the $35,000 settlement offer by facsimile.  He concluded that JB&A's actions in representing the Behrends were not the proximate cause of the damages incurred in the federal litigation because the Cook County case involved a breach of contract claim, and the federal case involved an issue of fraudulent conduct on the part of the Behrends.

Following the presentation of all the evidence, the jury began its deliberations.  The jury initially returned a verdict finding for the plaintiffs and against the defendants, assessing damages as "all fees incurred by [Profit Management] from JBA as they relate to the Baughman case from 4/18/89 to 11/23/93."  The trial court then sent the jury back to deliberate further.  Later, the jury returned a verdict in favor of the plaintiffs for $41,000, plus costs.  Both the plaintiffs and defendants filed posttrial motions.  Among other things, the defendants argued that the plaintiffs' cause of action was barred by the statute of limitations.  The trial court denied both posttrial motions.  In ruling on the defendants' statute of limitations argument, the trial court stated:

"[T]here was not an issue instruction, more specifically, and also, the question of the statute of limitations was not raised in the burden of proof instruction, so consequently, it was never submitted to the jury whether or not there was a barring of the plaintiffs' cause of action by virtue of the statute of limitations.

In my view, then, the issue of whether or not the plaintiffs knew or should have known of the fact that their cause of action accrued was waived by the defendant.

The testimony by Mr. Behrend that he knew about it on December 21, 1993, may be a judicial admission, and I think it undoubtedly is a judicial admission -- I think it is undoubtedly a judicial admission -- that could be used were there a subsequent trial on this case, and it would be a possible basis of barring a subsequent trial, but in my view, the question was one *** of fact that could have and should have been submitted to the jury in connection with the issue and burdens instructions and was not by Mr. Konicek, and therefore, I find the whole question of statute of limitations to have been waived."

On appeal, the plaintiffs first argue that the trial court erred in striking paragraph 42 of their complaint.  They contend that the conduct of attorney Konicek, as agent for the defendants, in disclosing  Mr. Behrend's deposition and the June 30, 1989, letter referred to in that deposition violated the rule of confidentiality set forth in Rule 1.6 of the Illinois Rules of Professional Conduct (155 Ill. 2d R. 1.6) and constituted malpractice on the part of the defendants.  They further contend that because Mr. Behrend's deposition was not filed with any court until posttrial proceedings on September 22, 1998, the trial court should not have found that the deposition and the June 30, 1989, letter mentioned in the deposition were public documents.  On the other hand, the defendants contend that the plaintiffs waived the privilege by filing the instant malpractice lawsuit and by failing to assert the privilege when the complained-of items were mentioned in the federal case.

The attorney-client privilege is an evidentiary privilege that provides limited protection to communications from the client by prohibiting their unauthorized disclosure in judicial proceedings.  
In re Marriage of Decker
, 153 Ill. 2d 298, 312 (1992).  The privilege is recognized as one of the oldest of the privileges for confidential communications known to the common law.  
Decker
, 153 Ill. 2d at 312.  The client asserting the privilege has the burden of proving its existence.  
Nieukirk v. Board of Fire & Police Commissioners
, 98 Ill. App. 3d 109, 112 (1981).  The attorney-client privilege, like most privileges, may be waived by the client when he voluntarily testifies to the privileged matter.  
Newton v. Meissner
, 76 Ill. App. 3d 479, 498 (1979).  Any disclosure by the client is inherently inconsistent with the policy behind the privilege of facilitating a confidential attorney-client relationship and, therefore, must result in a waiver of the privilege.  
People v. Childs
, 305 Ill. App. 3d 128, 136 (1999); 
Fidelity & Casualty Co. v. Mobay Chemical Corp.
, 252 Ill. App. 3d 992, 1000-01 (1992).

In addition to the attorney-client privilege, there exists the attorney's rule of confidentiality, which encompasses the attorney-client evidentiary privilege as well as the attorney's fiduciary duty to his client.  
Decker
, 153 Ill. 2d at 314.  The rule of confidentiality sets forth what an attorney may, may not, or must ethically reveal about his client.  Unlike the evidentiary attorney-

client privilege, the rule of confidentiality applies not only during judicial proceedings, but at all times, and to a client's secrets as well as confidences.  
Decker
, 153 Ill. 2d at 314.  This rule of confidentiality is contained in Rule 1.6 of the Illinois Rules of Professional Conduct, which provides in relevant part:

"(a) Except when required under Rule 1.6(b) or permitted under Rule 1.6(c), a lawyer shall not, during or after termination of the professional relationship with the client, use or reveal a confidence or secret of the client known to the lawyer unless the client consents after disclosure.

***

(c) A lawyer may use or reveal:

***

(3) confidences or secrets necessary to establish or collect the lawyer's fee or to defend the lawyer or lawyer's employees or associates against an accusation of wrongful conduct."  155 Ill. 2d R. 1.6.

Here, we conclude that Mr. Behrend waived the attorney-client privilege by giving his deposition testimony, in which he referred to his attorney's comments about the effect any judgment would have in the Cook County case and referred to the June 30, 1989, letter.  The plaintiffs cite no authority for the proposition that testifying about the matter in the deposition did not destroy the confidential or secretive nature of the material.  Once the plaintiffs waived the privilege by Mr. Behrend's failure to assert it at his deposition, the material was no longer confidential and secret.   Rule 1.6 only prohibits an attorney from revealing secret or confidential matters.  Thus, the defendants did not violate Rule 1.6 when their attorney disclosed the contents of the deposition and letter since they were no longer confidential by that time.  The plaintiffs further waived the privilege when they did not object to the material in federal court on the basis of its confidential nature.

The plaintiffs next argue that the trial court erred in denying their motion for a directed verdict.  In that regard, they contend that the trial court erred in allowing the defendants to file their answer and affirmative defenses after the plaintiffs' case in chief.  
First, they complain that the defendants' answer to the verified fourth amended complaint was unverified and should not have been allowed for that reason.  Second, they note that the answer was not actually file stamped until August 24, 1989, the same day that final judgment was entered on the jury verdict.  Third, the plaintiffs maintain that, because the defendants previously raised the affirmative defense of unclean hands in a section 2--619 motion to dismiss and the motion was denied by the trial court, the defendants were precluded from raising that affirmative defense at trial.  Fourth, the plaintiffs argue that they were not given an opportunity to attack by way of motion the unclean-hands defense as being insufficient as a matter of law.  
They contend that the unclean-hands defense should have been barred as a matter of law
.

Section 2--616 of the Code provides that "[a]t any time before final judgment amendments may be allowed on just and reasonable terms."  735 ILCS 5/2--

616 (West 1998).  It is within the sound discretion of the trial court to permit or refuse an amendment to pleadings, and its decision will not be reversed on appeal absent a clear abuse of discretion.  
American Pharmaseal v. Tec Systems
, 162 Ill. App. 3d 351, 360 (1987).   Factors to be considered in evaluating the court's discretion include the timeliness of the proposed amendment and whether other parties have been prejudiced or surprised by the amendment.  
American Pharmaseal
, 162 Ill. App. 3d at 360.

The plaintiffs cite 
American Pharmaseal
, 162 Ill. App. 3d 351, for the proposition that it is improper to permit a defendant to file an affirmative defense at the close of the plaintiff's case.  However, that case did not hold that it is never proper to permit an amendment adding an affirmative defense after the plaintiff's case in chief.  See 
American Pharmaseal
, 162 Ill. App. 3d 359-61; see also 
Chemical Bank v. Paul
, 244 Ill. App. 3d 772, 784 (1993) (where court allowed filing of affirmative defense after close of plaintiff's case).  Rather, the reviewing court in 
American Pharmaseal
 held that the trial court did not abuse its discretion in striking the defendant's affirmative defense where it was raised for the first time after the close of the plaintiff's case, it was a new theory of defense never raised before in the case, and the defendant did not offer any good reason for not raising it sooner.  
American Pharmaseal
, 162 Ill. App. 3d at 360-61.

In contrast, the defendants in the present case raised the exact same defenses in a previous answer, and the trial court found that the defenses did not take the plaintiffs by surprise.  Moreover, the trial court obviously felt that the defendants had a good reason for the late amendment given that the plaintiffs had filed their fourth amended complaint just eight days before, and the defendants' answer was only three days late at the time they sought leave to file it.  We find no error in the actual filing of the answer and affirmative defense with the clerk of the court after the jury returned the verdict because the trial court had already allowed the amendment, and there is no indication from the record that the defendants' filing of the answer and affirmative defenses occurred after final judgment was entered.

We also note that there is no merit to the plaintiffs' contention with respect to the defendants' unverified answer.  
Pinnacle Corp. v.  Village of Lake in the Hills
, cited by the plaintiffs in support of their argument, specifically notes that section 2--605 of the Code (735 ILCS 5/2--605 (West 1998)) contains an exception to the verification requirement where verification is excused by the court.  
Pinnacle Corp. v. Village of Lake in the Hills
, 258 Ill. App. 3d 205, 209 (1994).  Here, the trial court specifically excused verification.  Accordingly, we find that the plaintiffs' argument in this regard must be rejected.

The plaintiffs cite section 2--619(a) of the Code (735 ILCS 5/2--619(a) (West 1998)), contending that the defendants were precluded from raising their two affirmative defenses in their answer because the trial court had previously denied the defendants' section 2--619 motion to dismiss, which was based on the same defenses. 

The plaintiffs are mistaken in their claim that section 2--619(d) of the Code precluded the defendants from raising their previously denied affirmative defenses.  Section 2--619(d) provides that the raising of certain matters by motion under that section "does not preclude the raising of them subsequently by answer unless the court has disposed of the motion on its merits."  735 ILCS 5/2

--619(d) 
(West 1998).  Here, it was the defendants that filed a section 2--619 motion to dismiss the plaintiffs' complaint.  The trial court specifically explained that the motion was denied because the matters could not be decided as a matter of law because questions of fact remained.  Thus, there was no determination on the merits and, as the trial court noted, the defendants were entitled to raise the matters as affirmative defenses at trial.  The record indicates that the plaintiffs never requested a ruling on their motion to dismiss the defendants' affirmative defenses.   Instead, they filed a third amended complaint.  They also did not request leave to file a motion to dismiss the affirmative defenses to the fourth amended complaint.  Thus, there is no merit to the plaintiffs' claim that they were denied an opportunity to attack the affirmative defenses by way of motion.

The plaintiffs claim that the affirmative defense of unclean hands should have been denied as a matter of law.  Citing 
Sarno v. Akkeron
, 292 Ill. App. 3d 80 (1997), and 
Bucci v. Rustin
, 227 Ill. App. 3d 779 (1992), the plaintiffs claim that they acted at all times on the advice of their counsel, and for that reason, the unclean-hands defense should have been denied.

We find 
Sarno
 and 
Bucci
 to be distinguishable from the present case.  Instead of supporting the plaintiffs' contention that the issue should have been decided as a matter of law, they support the determination that the issue was one of fact for the trier of fact to decide.  In 
Bucci
, the defendant attorney was sued for malpractice because he failed to put on any defense in the underlying action, and this resulted in his client being found liable for fraud.  227 Ill. App. 3d at 781.  In reversing the section 2--619 dismissal of the plaintiff's malpractice action, the reviewing court noted the rule of 
Makela v. Roach
, 142 Ill. App. 3d 827 (1986), that, where a party voluntarily elects to follow advice intended to extricate himself from a questionable situation, he comes to this court with unclean hands and may not seek relief from his wrongful conduct through a legal malpractice action.  
Bucci
, 227 Ill. App. 3d at 783.  The 
Bucci
 court, however, found it could not apply the 
Makela
 rule to affirm the dismissal because a question of fact remained as to what the result of the underlying proceeding would have been if the plaintiff had been properly represented in the underlying proceeding.  
Bucci
, 227 Ill. App. 3d at 784.

In 
Sarno
, a malpractice plaintiff was represented at a bad-faith hearing by an attorney with a conflict of interest.  
Sarno
, 292 Ill. App. 3d at 87.  In reversing the trial court's section 2--619 dismissal of the malpractice complaint based on unclean hands, the appellate court was unable to say as a matter of law that the client had a fair opportunity to defend itself against the charge of bad faith, and thus the court concluded that it could not apply unclean hands to affirm the dismissal of the complaint.  
Sarno
, 292 Ill. App. 3d at 87.   

Both of the above cases indicate that the unclean-hands issue in the present case was a question of fact for the jury to consider.  The plaintiffs claim that they would have paid Baughman the commissions he initially requested or at the very least they would have settled the underlying case for $35,000 if they had known that the forfeiture provision of the underlying contract was unenforceable.  However, we note that Baughman testified that he would have been willing to settle the case for $35,000 up to the date of trial in the Cook County case in January 1994.  This would have been after the time that the plaintiffs retained new counsel and were aware of the fact that the forfeiture provision was unenforceable.  Applying the holdings of 
Bucci
 and 
Sarno
 to these facts, we note that, while it would have been improper to grant the  defendants' section 2--615 motion to dismiss based on unclean hands, the question was nonetheless one for the jury to resolve.  The plaintiffs claim that they were prejudiced by the defendants' failure to request leave to file the unclean-hands defense before the close of the plaintiffs' case.  However, the plaintiffs do not point to any additional evidence that they would have elicited on the issue to bolster their position and, as the trial court noted, the defense was no surprise to the plaintiffs.  Accordingly, the plaintiffs were not prejudiced by the defense, and the issue was properly submitted to the jury.

[Nonpublishable material removed under Supreme Court Rule 23.]

Next, the plaintiffs argue that defense counsel committed reversible error in his closing argument when he referred to the Bible and used a parable and various words of Jesus to make analogies.  The plaintiffs claim defense counsel's comments were prejudicial and implied that they were not acting as Christians.   Specifically, defense counsel told the jury that Jesus had told the Pharisees that "[i]t's not what goes into the mouth that's bad, it's what comes out, because out of the heart -- out of the mouth speaks the overflow of the heart."  Defense counsel then told the jury:

"Put the judgment on the wall and take a leak, those are not my words, friends; I don't speak like that.  Those are not my words.  The let's have some fun, those are not my words.  Those are their words, his words.  Don't let them fool you ***."

Later in his argument defense counsel referred to the Bible as the "[C]hristian's charter" and "a good book of lessons" and stated:

"There is another lesson that was told where there are two men, two people, and they are building a house.  One man builds his house on rock, and we are told that the rain comes down, the streams rise, and the wind, it beats against that house, and we are told that house stands because its foundation is rock.

The other man, who is described as the foolish man, built his house on sand, and the same rain came down; streams rose; the wind blew and they beat on that house that was built on sand, and we are told that it fell with a great crash because it had no foundation.

If you don't have foundation in this courtroom, your case falls with the same great crash.  I don't need to prove their case; they need to come into this courtroom and prove that my clients deviated and departed from the standard of care.  They have utterly failed because their expert relied upon a completely incorrect assumption.  They have utterly failed to prove their case."

In support of their position that the above-stated comments were improper, the plaintiffs rely on 
Bulleri v. Chicago Transit Authority
, 41 Ill. App. 2d 95 (1963), a negligence case in which the defendant appealed the jury award for the plaintiff.  There, the plaintiff's counsel told the jury that he was a Catholic and talked about voting for "Mr. Kennedy" in the coming presidential election.  
Bulleri
, 41 Ill. App. 2d at 101-02.  The defendant's objections to the comments were overruled.  
Bulleri
, 41 Ill. App. 2d at 102.  In holding that the trial court erred in overruling the defendant's objections to plaintiff's counsel's comments, the appellate court noted that "[t]he unnecessary injection of religious or political questions into a case of this nature diverts the jurors from judicial consideration of the facts and the law, regardless of whether their response may be friendly or antagonistic."  
Bulleri
, 41 Ill. App. 2d at 102.

We do not find 
Bulleri
 to be particularly close factually to the present case since it involved the unnecessary injection of religion and politics into a case over the objection of the opposing party, while the present case involves analogies to Biblical parables to illustrate points at issue to which the plaintiffs offered no objection.  It is well settled that broad latitude must be afforded counsel in closing argument (
Hajian v. Holy Family Hospital
, 273 Ill. App. 3d 932, 942 (1995); 
Ellington v. Bilsel
, 255 Ill. App. 3d 233, 238 (1993)), and we do not believe that any 
per
 
se
 rule exists in Illinois prohibiting the use of Biblical parables and analogies.  Counsel may draw upon literature, history, science, religion, and philosophy for material for his argument and, therefore, should not be so restricted as to be precluded from referring, by way of illustration, to historical facts and characters or Biblical teachings.

A case more closely resembling the present case is 
American National Bank & Trust Co. v. Thompson
, 158 Ill. App. 3d 478 (1987).  There, the plaintiff contended that defense counsel committed reversible error by allegedly arguing to the jury that doing a good deed as demonstrated in the Biblical parable of the Good Samaritan constitutes a legal defense to negligence.  
Thompson
, 158 Ill. App. 3d at 486.  Prior to the closing argument, the trial court had ruled that defense counsel could talk about the parable of the Good Samaritan but not that the moral law of the parable was binding on the jury.  
Thompson
, 158 Ill. App. 3d at 487.  Thereafter, defense counsel summarized the parable of the Good Samaritan in his closing argument to the jury.  
Thompson
, 158 Ill. App. 3d at 487.  At that point, plaintiff's counsel again raised an objection, arguing that the law governing the case was Illinois law, not Biblical law.  
Thompson
, 158 Ill. App. 3d at 487.  The trial court stated that it agreed with plaintiff's counsel and admonished defense counsel that he was getting " 'pretty far afield.'  "  
Thompson
, 158 Ill. App. 3d at 487.  Defense counsel concluded by arguing that the defendant was not negligent but that he acted as an ordinary person would have acted "if he stopped to aid a fallen man on the highway."  
Thompson
, 158 Ill. App. 3d at 487.

In affirming the trial court's judgment, the reviewing court found that no error occurred in defense counsel's discussion of the parable of the Good Samaritan because defense counsel never asserted that Biblical law should override the law of Illinois with respect to the standard of care to be applied in the case.  
Thompson
, 158 Ill. App. 3d at 487.  Additionally, the appellate court found it important that the trial court sustained plaintiff's objection to defense counsel's discussion of the parable and took corrective action.  
Thompson
, 158 Ill. App. 3d at 487-88.  Finally, the court found that, even if error did occur with respect to defense counsel's argument, the error was not so prejudicial as to require reversal.  
Thompson
, 158 Ill. App. 3d at 488.  

Applying 
Thompson
 to the present case, we find that no error occurred in defense counsel's closing argument.  Defense counsel did not suggest that the Biblical illustrations he used should control over Illinois law.  Rather, he used the illustrations to emphasize his points that the plaintiffs' intent could be inferred from their words and that they had not met their burden of proof in the case.  We also note that the plaintiffs waived any objection to the comments by failing to object at trial and that, even if some of the comments constituted error, the trial court did not abuse its discretion in its determination that the comments were not so highly prejudicial when read in context as to require a new trial.  It is well settled that it is within the sound discretion of the trial court to determine whether unobjected-to closing argument was so prejudicial as to deny a party a fair trial.  
Ellington
, 255 Ill. App. 3d at 238.  This is so because the trial court, having heard all of the comments and arguments, is in a superior position to assess the accuracy and prejudicial effect, if any, upon the jury of counsel's comments.  
Ellington
, 255 Ill. App. 3d at 239.

Lastly, the plaintiffs contend that the jury verdict was contrary to the manifest weight of the evidence.  They note that the jury found the negligence issues for the plaintiffs, but the verdict of $41,000 was not supported by the evidence.  They claim that the total proved damages in the case amounted to $516,836.51, which included $400,000 for the federal court judgment, plus $137,555.05 for attorney fees, less $20,719.54, which was the amount for which the underlying Cook County case could have been settled.

It is well settled that the question of damages is peculiarly one of fact for the jury to resolve, and courts are reluctant to interfere with the discretion of the jury in its assessment of damages.  
Usselmann v. Jansen
, 257 Ill. App. 3d 978, 981 (1994).  Courts of review are empowered to reverse a jury verdict only if it is against the manifest weight of the evidence.  
Simmons v. University of Chicago Hospitals & Clinics
, 247 Ill. App. 3d 177, 190 (1993).  Thus, a reviewing court will not upset a jury's award of damages unless a proven element of damages was ignored, the verdict resulted from passion or prejudice, or the award bears no reasonable relationship to the loss suffered.  
Snover v. McGraw
, 172 Ill. 2d 438, 447 (1996).  It is the function of the jury to weigh contradictory evidence, to judge the credibility of the witnesses, and to draw the ultimate conclusion as to the facts.  
Simmons
, 247 Ill. App. 3d at 190.

In the present case, the jury heard the evidence that the plaintiffs would have settled the Cook County case early in the litigation if they had been advised to do so by JB&A and that plaintiffs eventually settled the federal case at a cost of $400,000, plus the attorney fees they incurred in connection with that case.  However, the jury also heard evidence that plaintiffs were very reluctant to settle the Cook County case and that the case was not settled for $35,000 despite the fact that, over a month before trial, the plaintiffs became keenly aware of the difficulty of defending the case.  Additionally, there was testimony from Baughman that he would have settled the case for $35,000 at any time prior to trial.  Thus, there was some evidence in the record from which the jury could have concluded that the plaintiffs' damages were limited to around $35,000, which, as the trial court noted at the posttrial proceeding, was in the range of the $41,000 verdict returned by the jury.  Under the circumstances, we will not disturb the jury's verdict.

In their cross-appeal, the defendants argue that the plaintiffs' complaint was barred by the two-year statute of limitations set forth in section 13--

214.3(b) of the Code (735 ILCS 5/13--214.3(b) (West 1998)).  The defendants contend that the trial court erred in denying their motion for a directed verdict that was brought on that basis.

The plaintiffs argue in response that the defendants waived the statute of limitations issue by not filing an affirmative defense to the plaintiffs' fourth amended complaint by the start of trial and by not presenting the jury with an issue and burden of proof instruction on the defense.  They maintain that the limitations issue was a question of fact for the jury to resolve.  They further maintain that, because the defendants did not present any instruction in that regard, the defendants waived the issue.

We first address the contention that the defendants waived the statute of limitations defense by failing to file their affirmative defense before the start of trial.  As we indicated earlier in this disposition, the decision to permit a defendant to file an amended answer raising an affirmative matter, such as the statute of limitations, anytime prior to final judgment is within the trial court's sound discretion.  
Ciers v. O.L. Schmidt Barge Lines, Inc.
, 285 Ill. App. 3d 1046, 1051 (1996).  Thus, it has been noted that failure to plead an affirmative defense does not constitute waiver.  
People ex rel. Foreman v. Village of Round Lake Park
, 171 Ill. App. 3d 443, 450 (1988).  Although the decision to allow an affirmative defense is within the sound discretion of the trial court, it should not be allowed where it would result in surprise or prejudice to the other party.  
Chemical Bank
, 244 Ill. App. 3d at 784.  However, where the affirmative defense is not a surprise to the plaintiff, it may be allowed even after the plaintiff has presented his case in chief.  
Chemical Bank
, 244 Ill. App. 3d at 784.

Here, the trial court specifically noted on August 20, 1998, at the close of the plaintiffs' case, that the plaintiffs filed their fourth amended complaint just eight days earlier on August 12, 1998, and that the defendants' answer to that complaint was due on August 17, 1998.  The court noted that the answer was three days late but that it had discretion to allow the late filing.  The court stated that the answer and affirmative defense were simply a refiling of the previously filed answer and affirmative defense, and it would therefore allow the answer and affirmative defense because it was not a surprise to the plaintiffs.  Under the circumstances, we find that the trial court did not abuse its discretion in allowing the defendants to file their answer raising the statute of limitations as an affirmative defense to the plaintiffs' fourth amended complaint.

We next turn to the issue of whether the statute of limitations issue as presented by the particular facts of this case was a question of law for the court to decide or a question of fact for the jury to decide.  We agree with the plaintiffs that if, in the context of this case, the statute of limitations issue was one of fact, then the trial court properly concluded that the defendant waived the issue by failing to submit it to the jury for determination.  

Ordinarily, the issue of when a plaintiff should have discovered his injury is a question of fact, but it may be decided as a matter of law by the court where the undisputed facts allow for only one conclusion.  
Hermitage Corp. v. Contractors Adjustment Co.
, 166 Ill. 2d 72, 85 (1995); 
Jackson Jordan, Inc. v. Leydig, Voit & Mayer
, 158 Ill. 2d 240, 250 (1994).  Thus, we must determine whether the relevant facts are undisputed and whether they allow for only one conclusion given the applicable law.

Section 13--214.3(b) of the Code provides:

"An action for damages *** against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought."  735 ILCS 5/13--214.3(b) (West 1998).

A cause of action for legal malpractice does not accrue until the client discovers or should discover the facts establishing the elements of his cause of action.  
Tucek v. Grant
, 129 Ill. App. 3d 236, 240-41 (1984).  A cause of action for attorney malpractice requires an attorney-client relationship, a duty arising from that relationship, a breach of that duty, and actual damages or injury proximately caused by that breach.  
Palmros v. Barcelona
, 284 Ill. App. 3d 642, 646 (1996).  Actual damages are an essential element of a cause of action for attorney malpractice; with no damages, no cause of action has accrued.  
Palmros
, 284 Ill. App. 3d at 646.  As the statute implies, the "injury" is not the negligent act itself; rather, it is something caused by the negligent act or omission for which the plaintiff may seek damages.  
Palmros
, 284 Ill. App. 3d at 646.  Attorney fees incurred as a proximate result of a lawyer's malpractice are damages that make a cause of action complete and thus may start the running of the limitations period.  
Palmros
, 284 Ill. App. 3d at 647.  Damages are speculative only if their existence itself is uncertain and not if the amount is uncertain or yet to be fully determined.  
Palmros
, 284 Ill. App. 3d at 647; 
Goran v. Glieberman
, 276 Ill. App. 3d 590, 595 (1995). 

The defendants claim that the plaintiffs knew of JB&A's malpractice in December of 1993 and knew that attorney fees were incurred to their successor attorneys on December 21, 1993, in connection with correcting JB&A's defective work.  Thus, the defendants claim that the statute of limitations began to run on December 21, 1993, and the plaintiffs' complaint filed on January 24, 1996, was filed beyond the two-year period allowed by the statute.  In support of their position, the defendants rely on 
Palmros
, 284 Ill. App. 3d 642, and 
Goran
, 276 Ill. App. 3d 590.  In response, the plaintiffs maintain that the statute did not begin to run until a final judgment was entered in the Cook County case on July 15, 1994, and, because the case was filed within two years of that date, it was timely filed as a matter of law.

In 
Palmros
, this court addressed the question of when a client knows or should know of her attorney's negligence for purposes of the statute of limitations.  
Palmros
, 284 Ill. App. 3d 642.  In that case, the widow of a decedent filed suit against the decedent's attorney for malpractice in drafting and executing the decedent's will after she was named as a defendant in an action contesting the validity of the decedent's will and trust.  
Palmros
, 284 Ill. App. 3d at 644.  At issue was whether the applicable statute of limitations for the widow's malpractice claim was two years from the date of the decedent's death or within six months of the admission of the decedent's will to probate.  
Palmros
, 284 Ill. App. 3d at 645.  That determination was dependent upon whether the injury for which the widow sought redress occurred prior to the death of her husband, in which case the two-year statute of limitations applied, or after the death of her husband, in which case the six-month statute applied.  
Palmros
, 284 Ill. App. 3d at 645.

On appeal, the widow argued either that the injury occurred before the death of the decedent or, alternatively, that she could not have discovered her injury until the will had been invalidated by the probate court, in which case her malpractice complaint was premature.  
Palmros
, 284 Ill. App. 3d at 645.  This court disagreed, holding that the widow's cause of action accrued when she first suffered damages as a result of the defendant's negligence, 
i.e.
, when she incurred attorney fees to defend the will contest.  
Palmros
, 284 Ill. App. 3d at 647.  This court expressly stated that attorney fees incurred as a proximate result of a lawyer's malpractice are damages that make the cause of action complete for purposes of starting the running of the limitations period.  
Palmros
, 284 Ill. App. 3d at 647.  Because the widow incurred those attorney fees after the death of the decedent, the six-month limitation period applied.  
Palmros
, 284 Ill. App. 3d at 647.

In holding that the plaintiff's malpractice cause of action in 
Palmros
 accrued when she incurred attorney fees to defend against the will contest, we noted that the case was analogous to 
Goran
, 276 Ill. App. 3d 590, which also addressed the issue of when a plaintiff's legal malpractice claim accrued for purposes of the statute of limitations.  In 
Goran
, the plaintiff alleged that the defendant's negligence in bringing her appeal from a dissolution of marriage judgment forced her to hire new counsel to redo her brief and the record on appeal so they complied with court rules.  
Goran
, 276 Ill. App. 3d at 591-92.  The plaintiff claimed that her cause of action accrued when the appellate court ruled against her on the appeal that the defendant had filed on her behalf, while the defendant claimed that the plaintiff's damages had accrued when she had to pay additional expenses to redo her appellate brief, damages that were incurred regardless of whether the appellate court affirmed or reversed her appeal.  
Goran
, 276 Ill. App. 3d at 595.  The Appellate Court, First District, agreed with the defendant, holding that because the plaintiff had suffered actionable damages when she paid additional attorney fees to bring her appellate brief into compliance, her cause of action accrued at that point.  The court noted that "[d]amages are speculative only when uncertainty exists as to the fact of damages, rather than the amount of damages."
  
Goran
, 276 Ill. App. 3d at 595.  Finally, the court noted that,  while the question of when a plaintiff should have discovered his injury is normally a question of fact, a court may determine the date of the commencement of the statute of limitations where the undisputed facts show that only one conclusion is evident.  
Goran
, 276 Ill. App. 3d at 596.

Since 
Palmros
 and 
Goran
 were decided, two other Illinois cases have addressed the issue of when a legal malpractice cause of action accrued for statute of limitation purposes.  In 
Brite Lights, Inc. v. Gooch
, 305 Ill. App. 3d 322 (1999), the plaintiff client had hired the defendant attorney to represent it in its cause of action for damages.  The attorney failed to appear at a status hearing and the client's case was dismissed for want of prosecution (DWP).  
Brite  Lights
, 305 Ill. App. 3d at 323.  The attorney then recommended refiling the action with a new complaint before the close of the statutory period, which was one year from the date of the DWP order.  
Brite Lights
, 305 Ill. App. 3d at 323.  The attorney, however, never refiled the action and never advised the plaintiff that he had failed to do so.  
Brite Lights
, 305 Ill. App. 3d at 324.  On appeal, the client argued that its cause of action accrued when its complaint became time-barred by the attorney's failure to refile one year from the DWP, and the attorney argued that the cause of action accrued upon entry of the DWP.  
Brite Lights
, 305 Ill. App. 3d at 325.  This court agreed with the client, stating "[i]t was only when the DWP judgment became final, upon the expiration of the one-year period for refiling, that  plaintiff suffered a loss for which it could seek damages."  
Brite Lights
, 305 Ill. App. 3d at 326.

In 
Butler v. Mayer, Brown & Platt
, 301 Ill. App. 3d 919 (1998), the plaintiff had sued his brother and sister for specific performance of a shareholder's agreement.  The trial court ruled that the plaintiff was not entitled to specific performance because he failed to prove the net fair market value of the shares by clear and convincing evidence.  
Butler
, 301 Ill. App. 3d at 921.  The court suggested on the record that a breach of contract suit for damages where clear and convincing evidence was not required might be more appropriate.  
Butler
, 301 Ill. App. 3d at 921.  Later, the plaintiff's attorneys sought to amend the complaint to add a breach of contract count.   
Butler
, 301 Ill. App. 3d at 921.  On June 3, 1993, the trial court denied leave to amend the complaint, stating that there had already been a lengthy trial and to allow an amendment would create a " 'grossly inefficient result.' "  
Butler
, 301 Ill. App. 3d at 921.  On February 1, 1994, the trial court awarded the plaintiff's sister attorney fees and entered a final judgment.  
Butler
, 301 Ill. App. 3d at 921.  The trial court's judgment was affirmed on appeal.  
Butler
, 301 Ill. App. 3d at 922.  From the time leave to amend the complaint was denied until the appeal was denied, the plaintiff's attorneys assured him that the trial court, not counsel, had erred.  
Butler
, 301 Ill. App. 3d at 923.

The plaintiff sued his attorneys for malpractice on March 7, 1997, which was more than two years from the final judgment denying leave to amend the complaint but less than two years from the date the appeal was affirmed.  
Butler
, 301 Ill. App. 3d at 922.  The trial court held that the undisputed facts supported only the conclusion that the plaintiff knew or should have known no later than February 1, 1994, that the he was injured and his injury was wrongfully caused.  
Butler
, 301 Ill. App. 3d at 922-23.

On appeal, the Appellate Court, First District, rejected the plaintiff's argument that his cause of action could not have accrued until the underlying appeal was affirmed.  
Butler
, 301 Ill. App. 3d at 923-24.  The court further noted that the adverse ruling in the underlying case was the trial court's denial of the plaintiff's  motion for leave to amend his complaint.  
Butler
, 301 Ill. App. 3d at 924.  However, because of the attorneys' reassurances,  the fact that the motion could have been denied based on the merits of the case as opposed to the failure to amend earlier, and fact that the record did not reflect when the plaintiff first learned of the trial judge's rationale for denial, the appellate court concluded that the facts supported more than one conclusion as to when the cause of action accrued and remanded the cause for further proceedings.  
Butler
, 301 Ill. App. 3d at 924-25.  Finally, the 
Butler
 court noted that the plaintiff had alleged that his attorneys were negligent not only for failing to amend the complaint but also for using an expert witness at trial on the specific performance count that lacked the expertise to establish plaintiff's damages.  
Butler
, 301 Ill. App. 3d at 924.  The court noted that nothing in the February 1, 1994, order indicated that the plaintiff knew that the expert witness lacked the expertise to establish damages.  
Butler
, 301 Ill. App. 3d at 924.  The court concluded that there were several points in time where a fact finder could conclude that the plaintiff's injury was wrongfully caused, but the facts were not undisputed and did not point to only one conclusion.  
Butler
, 301 Ill. App. 3d at 925.  Accordingly, the court found that it was a question for the trier of fact to resolve.  
Butler
, 301 Ill. App. 3d at 925.

In applying the rationale expressed in 
Palmros
 and 
Goran
, it would seem that the plaintiffs' cause of action accrued when they incurred attorney fees to amend their answer on December 21, 1993.  However, in 
Butler
, a case more factually similar to the present one than either 
Palmros
 or 
Goran
, the court held that the relevant date for purposes of the limitations statute was the date the plaintiff first learned of the denial of the motion for leave to amend the complaint as untimely.  Similarly, in the present case, the undisputed facts in the record do not indicate precisely when the plaintiffs became aware of the denial of their motion for leave to amend.  Additionally, there were allegations of malpractice in the plaintiffs' complaint other than the one involving the admission to paragraph 9, and questions of fact remained as to when the plaintiffs' cause of action accrued with respect to those allegations.  Since the defendants failed to present the issue of the statute of limitations to the jury for it to resolve, we agree with the trial court that the defendants waived the issue.  Accordingly, we find that the trial court properly denied the defendants' motion for a directed verdict based on the statute of limitations defense.

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

GEIGER and RAPP, JJ., concur.