(No. 89594.—)

RICHARD R. JOHNSON, Appellee, v. MICHAEL J. HALLORAN *et al.*, Appellants.

*Opinion filed December 1, 2000.—Rehearing denied January 29, 2001.*

BILANDIC, J., joined by FREEMAN and McMORROW, JJ., specially concurring.

E. Michael Kelly, Steven M. Puiszis and John P. Goggin, of Hinshaw & Culbertson, of Chicago (Stephen R. Swofford, of counsel), for appellants.

Bruce A. Beeman, of Wolter, Beeman & Lynch, of Springfield, for appellee.

CHIEF JUSTICE HARRISON delivered the opinion of the court:

The issue in this case is whether sovereign immunity bars an action against members of the Cook County public defender's office for negligence they allegedly committed in the course of representing Richard Johnson, an indigent criminal defendant, pursuant to an appointment by the circuit court. The circuit court answered this question in the affirmative and granted summary judgment in favor of the public defenders and against Johnson, their former client. The appellate court reversed and remanded for further proceedings. 312 Ill. App. 3d 695. We granted leave to appeal. 177 Ill. 2d R. 315. For the reasons that follow, we now affirm the appellate court.

The record shows that in August of 1991, Richard Johnson was charged with aggravated criminal sexual assault in the circuit court of Cook County. The public de-

fender of Cook County was appointed by the court to represent Johnson. The defense of the case was then assigned to assistant public defender Michael Halloran.

Pretrial discovery obtained from the State included two Chicago police department lab reports. According to those reports, body fluids on the vaginal swab and panties of the victim collected after the crime revealed the presence of H activity, indicating that the fluids were from a person who was a secretor. The blood and saliva samples taken from the victim and from Johnson showed that they were both nonsecretors. Accordingly, Johnson could not have been the sole donor of the foreign body fluids found on the person or clothing of the victim.

Halloran, Johnson's appointed counsel, did not seek to use this information at Johnson's trial. Instead, he presented a motion *in limine* to prohibit the State from introducing any evidence of blood, semen, or saliva testing. The circuit court granted Halloran's motion *in limine* on September 4, 1992, and the test results were never placed in evidence.

Following a bench trial, Johnson was convicted in the underlying criminal case and was sentenced to 30 years in the Illinois Department of Corrections. Prior to this conviction, no DNA profile was performed on Johnson, the victim, or the victim's husband.

Johnson subsequently sought relief under the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq*. (West 1994)). In the course of the post-conviction proceedings, DNA tests were performed which exonerated Johnson. Based on those results, Johnson's conviction was vacated on March 8, 1996.

Following his exoneration and release, Johnson brought this legal malpractice action in the circuit court of Cook County. Named as defendants were Halloran, Johnson's trial attorney; Moses Collins, Halloran's supervisor; Shelton Green, supervisor of the public

defender's felony trial division; and Rita Fry, the Cook County public defender. Johnson also included a count against Cook County based on *respondeat superior*.

Defendants moved to dismiss plaintiff's complaint based on the statute of limitations. That motion was denied. Defendants then filed a motion for summary judgment on the basis of sovereign immunity, arguing that public defenders are employees of the state and that the circuit court therefore lacked subject matter jurisdiction to hear this case because plaintiff's claims must be brought in the Illinois Court of Claims. The circuit court granted defendants' motion on May 27, 1998.

Plaintiff appealed, arguing that the circuit court erred in granting summary judgment in favor of the defendants on the basis of sovereign immunity. Defendants cross-appealed, contending that the circuit court erred in finding that plaintiff's complaint was timely filed. The appellate court agreed with the circuit court that plaintiff's complaint was not time-barred. Contrary to the circuit court, however, it held that the claim was not barred by sovereign immunity either. Accordingly, it reversed the entry of summary judgment against plaintiff and remanded for further proceedings.

In reviewing the lower courts' judgments, we begin with an analysis of the defendants' employment status. As previously indicated, the circuit court regarded the individual defendants as employees of the state. They are not. While public defenders and their assistants may exercise sovereign powers in performing their duties (*Chief Judge of the Sixteenth Judicial Circuit v. Illinois State Labor Relations Board*, 178 Ill. 2d 333, 344 (1997)), the exercise of sovereign power does not, by definition, convert them into state employees. In Illinois, sovereign power is not restricted to the state government. It may also be exercised by home rule units. See Ill. Const. 1970, art. VII, § 6(i). Home rule units possess the same powers

as the state government, except where such powers are limited by the General Assembly. *City of Chicago v. Roman*, 184 Ill. 2d 504, 513 (1998). Counties which have a chief executive officer elected by the electors of the county, which Cook County does, are home rule units. Ill. Const. 1970, art. VII, § 6(a).

By statute, the office of public defender is created in the Counties Code (see 55 ILCS 5/3—4000 *et seq.* (West 1996)), and the public defender systems in Illinois are organized and operated at the county level (55 ILCS 5/1—1001 (West 1996)). In counties with a population over 1 million, which Cook County has, the public defender is appointed by the president of the county board of commissioners with the board's advice and consent. 55 ILCS 5/3—4004.1 (West 1996). The board sets the rate of compensation for the public defender and the public defender's assistants, clerks and employees, and that compensation is paid out of the county treasury. 55 ILCS 5/3—4004.2(d), 3—4008.1 (West 1996). The board is also responsible for providing suitable office quarters for the public defender and for paying, from the county treasury, necessary office, travel and other expenses incurred by the public defender in the defense of cases. 55 ILCS 5/3—4009 (West 1996).

The power to remove the public defender is vested in the president of the county board where, as here, the population of the county exceeds 1 million. 55 ILCS 5/3—4004.2(c) (West 1996). In addition, section 5—1003 of the Counties Code (55 ILCS 5/5—1003 (West 1996)) provides that the county is required to indemnify the public defender or assistant public defenders for any judgment rendered against them for any injury to person or property they cause while engaged in the performance of their duties, except where the injury results from willful misconduct.

Based upon the foregoing provisions, the office of

public defender must be regarded as a county office rather than as an agency of the state. Our court has expressly so held. *Doherty v. Caisley*, 104 Ill. 2d 72, 79 (1984). Public defenders and their assistants are therefore county employees, not employees of the State of Illinois.

Having established defendants' employment status, we must next consider whether and to what extent they are shielded by sovereign immunity. The doctrine of sovereign immunity was abolished by this court in *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill. 2d 11 (1959). The legislature responded by enacting the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1—101 (West 1996)) in 1965. That Act adopted the general principle from *Molitor* that local governmental units are liable in tort, but limited this liability with a list of immunities based on specific governmental functions. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 386 (1996).

Five years after the Local Governmental and Governmental Employees Tort Immunity Act was passed, the Illinois Constitution of 1970 was ratified. Article XIII, section 4, of the Illinois Constitution provides: "Except as the General Assembly may provide by law, sovereign immunity in this State is abolished." Ill. Const. 1970, art. XIII, § 4. This provision "embodies the presumptive rule from *Molitor* that units of local government are subject to tort liability," and makes the General Assembly the ultimate authority for determining whether such a governmental unit should nevertheless be immune from liability. Immunity must now be predicated upon a specific statutory enactment, and governmental units are liable in tort on the same basis as private tortfeasors unless a valid statute dealing with tort immunity imposes conditions on that liability. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 344-45 (1998).

Defendants have not cited and we have not found any specific statutory enactment which would cloak them with immunity for the legal malpractice alleged by plaintiff in this case. To the contrary, section 5—1003 of the Counties Code (55 ILCS 5/5—1003 (West 1996)), cited above, presupposes that public defenders and their assistants are subject to liability in tort for injuries they cause while engaged in the performance of their duties. If they were not, if sovereign immunity shielded public defenders and their assistants from such liability, there would be no need to require counties to indemnify them, as section 5—1003 does, for judgments recovered against them for the injuries they cause. The law would serve no purpose.

Because there was no specific statutory immunity for defendants at the time of the events giving rise to plaintiff's cause of action, the circuit court erred in granting summary judgment for defendants based on sovereign immunity, and its judgment was properly reversed by the appellate court. This conclusion is not altered by the General Assembly's subsequent enactment of the Public and Appellate Defender Immunity Act (Pub. Act 91—877, eff. June 30, 2000 (codified at 745 ILCS 19/1)), which took effect after the appellate court filed its opinion in the case.

The Public and Appellate Defender Immunity Act provides that public defenders and their assistants and the persons or entities employing them are not liable "for any damages in tort, contract, or otherwise, in which the plaintiff seeks damages by reason of legal or professional malpractice, except for willful and wanton misconduct." Putting aside the question of whether this legislation might constitute an impermissible attempt by the General Assembly to overrule the appellate court's judgment in a pending case, we note that application of the new law here would have the effect of stripping plaintiff

of his negligence claims. That cannot be permitted. Plaintiff's claims vested prior to enactment of the new law and constitute a constitutionally protected property interest. As such, they cannot be abrogated by subsequent legislative action without offending plaintiff's due process rights. See *Link v. Venture Stores, Inc.,* 286 Ill. App. 3d 977, 979 (1997).

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE BILANDIC, specially concurring:

I agree with the majority that sovereign immunity does not bar an action against members of the Cook County public defender's office for negligence they allegedly committed in the course of representing Richard Johnson. I also agree that the subsequently enacted Public and Appellate Defender Immunity Act (Act) (Pub. Act 91—877, eff. June 30, 2000 (codified at 745 ILCS 19/1)) does not apply in this case. I do so, however, for reasons other than those stated in the majority opinion.

I, along with other members of this court, have advocated the adoption by this court of the test set forth by the United States Supreme Court in *Landgraf v. USI Film Products,* 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994), for determining when a new or amended statute will be applied on appeal to pending cases. See *People v. Ramsey,* 192 Ill. 2d 154, 159-74, 174-88 (2000) (Bilandic, J., specially concurring; Freeman, J., also specially concurring, joined by McMorrow, J.). As I noted in *Ramsey,* the *Landgraf* test, which was devised for determining when a new federal statute will be applied on appeal to pending cases, is set forth as follows:

> " 'When a case implicates a federal statute [or a state statute] enacted after the events in suit, the court's first task is to determine whether Congress [or the General Assembly] has expressly prescribed the statute's proper reach.

If Congress [or the General Assembly] has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern ***.' " See *Ramsey*, 192 Ill. 2d at 171-72 (Bilandic, J., specially concurring), quoting *Landgraf*, 511 U.S. at 280, 128 L. Ed. 2d at 261-62, 114 S. Ct. at 1505.

I reiterate that this court should apply the above test in this case and in future cases concerning the application of a new or amended statute to a case pending on appeal. Applying the *Landgraf* test to the present case begins with the language of the Act itself. First, we must determine whether the General Assembly has expressly prescribed the proper reach of the Act, *i.e.*, whether the act applies to pending cases. See *Landgraf*, 511 U.S. at 280, 128 L. Ed. 2d at 261-62, 114 S. Ct. at 1505. The Act contains the following sentence: "This Act takes effect upon becoming law," *i.e.*, on June 30, 2000. See Pub. Act 91—877, § 99, eff. June 30, 2000. Such language does not indicate clearly the temporal reach of this Act. The question therefore becomes whether the Act would have retroactive effect, namely, whether it would impair the rights a party possessed when he acted. See *Landgraf*, 511 U.S. at 280, 128 L. Ed. 2d at 262, 114 S. Ct. at 1505. Application of the Act to this case would have retroactive effect because it would deprive plaintiff of his legal malpractice cause of action, based on negligence, which he possessed when he filed suit against defendants. Therefore, pursuant to the *Landgraf* test, our traditional presumption against statutory retroactivity teaches that this Act does not govern in this case, which was pending on appeal when the Act became law.

Based on the above analysis, I agree that the Public and Appellate Defender Immunity Act does not apply to this case.

JUSTICES FREEMAN and McMORROW join in this special concurrence.