In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-4223

RODNEY WOIDTKE,

*Plaintiff-Appellant,*

v.

ST. CLAIR COUNTY, ILLINOIS,
ST. CLAIR COUNTY PUBLIC
DEFENDER'S OFFICE, BRIAN K.
TRENTMAN, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 02 C 225—**David R. Herndon**, *Judge.*

ARGUED MAY 23, 2003—DECIDED JULY 7, 2003

Before EASTERBROOK, RIPPLE and WILLIAMS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* On March 29, 2002, Rodney Woidtke, invoking the diversity jurisdiction of the district court, *see* 28 U.S.C. § 1332, filed a three-count complaint against St. Clair County and public defenders Brian Trentman and Vincent Lopinot.[1] In Count I, Mr. Woidtke alleged

---

[1] Mr. Woidtke also named the St. Clair County Public Defender's Office as a defendant. The district court, however, determined
(continued...)

that Attorney Trentman, and his supervisor, Attorney Lopinot, had been negligent in their representation of Mr. Woidtke in a 1989 criminal proceeding that resulted in his conviction. Mr. Woidtke further alleged that the attorneys' negligent representation of him continued throughout his post-conviction proceedings until their withdrawal in 1998. In Count II, Mr. Woidtke, alleging that the attorneys' acts were willful and wanton, sought punitive damages. Finally, in Count III, Mr. Woidtke alleged that St. Clair County was liable for the wrongful acts of Trentman and Lopinot under 745 ILCS 10/9-102. On November 8, 2002, the district court dismissed Mr. Woidtke's complaint as time-barred under the relevant statute of limitations, 745 ILCS 10/8-101. Mr. Woidtke now seeks review of that decision in this court. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

In 1989, Attorney Brian Trentman, a St. Clair County assistant public defender, represented Rodney Woidtke in a trial for the murder of Audrey Cardenas. Vincent Lopinot was Trentman's supervising attorney. Prior to and during Mr. Woidtke's trial, Trentman also represented Dale Anderson, who later was deemed a suspect in Cardenas' murder. Mr. Woidtke submits that Trentman failed to investigate fully his claim of innocence. Had a

---

[1] (...continued)
that it was not an entity capable of being sued under Federal Rule of Civil Procedure 17(b), and Mr. Woidtke does not appeal that determination.

competent investigation been conducted, Mr. Woidtke asserts, the attorney would have uncovered evidence supporting the view that Anderson, not Mr. Woidtke, had committed the murder of Cardenas. Mr. Woidtke was convicted of Cardenas' murder and sentenced to a term of forty-five years in prison.

Trentman also undertook Mr. Woidtke's representation during his state post-conviction proceedings from October 1989 until January 1998. At that point, Trentman withdrew from the case. On May 11, 2000, after Mr. Woidtke had obtained new counsel, the Appellate Court of Illinois issued a final mandate vacating his conviction and remanding the case for a new trial. Mr. Woidtke was retried for Cardenas' murder, and on March 30, 2001, he was found not guilty. At the time of his release, Mr. Woidtke had been incarcerated for twelve years.

On March 29, 2002, Mr. Woidtke filed this action against the defendants, alleging that they were negligent in representing him. Specifically, Mr. Woidtke alleged that, by representing both Mr. Woidtke and Anderson, Attorney Trentman had a direct conflict of interest and that Trentman had failed to present evidence at Mr. Woidtke's trial that would have established his innocence. Mr. Woidtke also alleged that Trentman, knowing there was a conflict of interest, nevertheless continued his representation in post-conviction proceedings. Mr. Woidtke further alleged that Lopinot failed to supervise Trentman and to take steps necessary to remedy the direct conflict of interest.

The defendants moved to dismiss Mr. Woidtke's complaint as time-barred under the relevant statute of limitations, 745 ILCS 10/8-101, and statute of repose, 735 ILCS 5/13-214.3(c). Attorney Lopinot also asserted immunity under 745 ILCS 10/2-201 ("Determination of policy or exercise of discretion") and 745 ILCS 10/2-204 ("Acts or

omissions of another person"). Defendant St. Clair County also contended that it could not be held liable under 745 ILCS 10/2-109 for the acts or omissions of its employees (Trentman and Lopinot) if the employees themselves were not held liable.[2] On November 8, 2002, the district court granted the defendants' motion to dismiss Mr. Woidtke's complaint on the ground that it was barred by the statute of limitations. Under 745 ILCS 10/8-101, any action against a local entity or its employees must be commenced within one year from the date that the cause of action accrued.

In submitting their motion to dismiss, the defendants had taken the view that Mr. Woidtke's complaint was untimely because his cause of action accrued on May 11, 2000, when the Illinois Appellate Court issued its final mandate vacating his conviction. Because Mr. Woidtke did not file suit within one year of that date, his claim was barred. Mr. Woidtke, on the other hand, argued that his complaint was timely because his cause of action did not accrue until March 30, 2001, when he was found not guilty after a retrial. He contended that, because he had filed suit within one year of that date, he had complied with the statute of limitations. The district court, relying primarily upon *Griffin v. Goldenhersh*, 752 N.E.2d 1232 (Ill. App. Ct. 2001), determined that Mr. Woidtke's cause of action accrued on May 11, 2000, when the state appellate court issued its final mandate "overturning Woidtke's conviction and remanding the case for a new trial if the state chose to pursue Woidtke's prosecution." R.36 at 5.

---

[2] The parties agreed that St. Clair County was a local entity and that Trentman and Lopinot were employed by St. Clair County.

The court reasoned that, as of May 11, 2000, "all of the elements of Woidtke's cause of action were present." *Id.*

## II

## DISCUSSION

### A.

Mr. Woidtke does not dispute that he had one year from the date when his cause of action accrued to file suit against the defendants. *See* 745 ILCS 10/8-101 ("No civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued."). He submits, however, that the district court erred when it dismissed his complaint as time-barred because his cause of action did not accrue until March 30, 2001, when he was acquitted upon retrial. The defendants, on the other hand, maintain that the district court correctly determined that Mr. Woidtke's cause of action accrued on May 11, 2000, when the Illinois Appellate Court issued its final mandate overturning his conviction.

We review de novo the district court's decision to dismiss a complaint based on a statute of limitations defense. *See Perry v. Sullivan*, 207 F.3d 379, 382 (7th Cir. 2000). In undertaking our review, we must accept "as true all of plaintiff's factual allegations and the reasonable inferences drawn from them." *Id.* Because the jurisdiction of the district court was based on diversity of citizenship, our task is "to ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by that court if the present case were before it now." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002).

Under Illinois law, a cause of action for legal malpractice accrues when the client discovers, or should have discovered, the facts establishing the elements of his cause of action. *See Profit Mgmt. Dev. Group v. Jacobson, Brandvik & Anderson, Ltd.,* 721 N.E.2d 826, 841 (Ill. App. Ct. 1999); *Kohler v. Woollen, Brown & Hawkins,* 304 N.E.2d 677, 681 (Ill. App. Ct. 1973). The elements of a cause of action for attorney malpractice are: (1) an attorney-client relationship; (2) a duty arising from that relationship; (3) a breach of that duty; and (4) actual damages or injury proximately caused by that breach. *See Sorenson v. Law Offices of Theodore Poehlmann,* 764 N.E.2d 1227, 1229 (Ill. App. Ct. 2002); *Profit Mgmt. Dev. Group,* 721 N.E.2d at 842. In the case of a malpractice action brought against a criminal defense attorney, the plaintiff has the additional burden of proving his innocence of the crime for which the defendant represented him. *See Moore v. Owens,* 698 N.E.2d 707, 709 (Ill. App. Ct. 1998) (holding that a plaintiff must prove "actual innocence" in a malpractice action against his criminal defense counsel); *Kramer v. Dirksen,* 695 N.E.2d 1288, 1290 (Ill. App. Ct. 1998) (holding that a plaintiff must prove his own innocence before he may recover for his criminal defense attorney's malpractice); s*ee also Levine v. Kling,* 123 F.3d 580, 582 (7th Cir. 1997) (holding that, under Illinois law, a plaintiff suing his former criminal defense counsel must prove his own innocence and that a plaintiff is precluded from doing so if the conviction has not been overturned).

The Supreme Court of Illinois has not addressed the issue of when a former criminal defendant's cause of action for legal malpractice accrues against his former counsel. "[I]n the absence of prevailing authority from the state's highest court, federal courts ought to give great weight to the holdings of the state's intermediate appellate courts and ought to deviate from those holdings only

when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court." *Allstate*, 285 F.3d at 637.

The Illinois Appellate Court has addressed the issue on two separate occasions, once in *Johnson v. Halloran*, 728 N.E.2d 490 (Ill. App. Ct. 2000), *aff'd on other grounds*, 742 N.E.2d 741 (Ill. 2001), and again in *Griffin v. Goldenhersh*, 752 N.E.2d 1232 (Ill. App. Ct. 2001). In both *Johnson* and *Griffin*, the court determined that a former criminal defendant's cause of action accrues against his former counsel for legal malpractice when his conviction is overturned. *See Griffin*, 752 N.E.2d at 1241 ("[A] cause of action accrues when the reviewing court gives a final mandate [overturning the conviction] that is not stayed pending an appeal to another court."); *Johnson*, 728 N.E.2d at 494 ("Plaintiff's cause of action accrued . . . when his criminal conviction was overturned.").

The outcomes in *Johnson* and *Griffin* did not depend upon the distinction at issue in this case between the date of vacatur and the date of acquittal. In *Johnson*, the plaintiff filed a legal malpractice action against his former attorneys based on their representation of him in a prosecution for aggravated sexual assault, which resulted in his conviction. In February and March of 1993, he sent letters to the defendants, as well as the Attorney Registration and Disciplinary Commission, complaining about the legal representation that he had received in his criminal case; the plaintiff specifically mentioned DNA evidence. On March 8, 1996, in state post-conviction proceedings, the plaintiff's conviction was vacated based on DNA test results. The plaintiff filed a malpractice action against the defendants on November 22, 1996. In reply, the defendants argued that the plaintiff's cause of action was

time-barred because his action had accrued in February or March of 1993 when he wrote letters complaining about the representation he received at his criminal trial. The court disagreed. *See Johnson*, 728 N.E.2d at 494. It held that the plaintiff's cause of action was timely filed because it "accrued on March 8, 1996, when his criminal conviction was overturned." *Id.* The court reasoned that "[i]t was at this point that all of the elements of plaintiff's cause of action were present." *Id.*

In *Griffin*, the plaintiff filed suit against his former attorneys based on their allegedly negligent representation of him in a murder trial. The plaintiff had been convicted in June of 1981. On May 4, 1995, the United States District Court had granted the plaintiff's motion for a writ of habeas corpus based on ineffective assistance of counsel. On May 21, 1996, this court had affirmed the district court's decision to issue the writ. We stated that "plaintiff is to be released from custody, 'unless the State of Illinois elects to retry [plaintiff] within [120] days from the issuance of this [c]ourt's final mandate.'" *Griffin*, 752 N.E.2d at 1237 (alteration in original) (quoting *Griffin v. McVicar*, 84 F.3d 880, 891 (7th Cir. 1996)). We denied the State's petition for rehearing on September 23, 1996, and issued our final mandate on September 27, 1996. The plaintiff was released from prison on October 9, 1996. On June 29, 1998, the plaintiff filed a malpractice action against his former counsel. The defendants contended that the plaintiff's cause of action was time-barred under the relevant two-year statute of limitations, 735 ILCS 5/13-214.3(b), because his action accrued when he was convicted in June of 1981. The plaintiff, on the other hand, argued that his complaint was timely filed because his cause of action did not accrue until we issued our final mandate on September 27, 1996, vacating his conviction.

The court agreed with the plaintiff. *See Griffin*, 752 N.E.2d at 1238. After reviewing *Johnson* (and similar decisions from other state courts), the court held that "a legal malpractice cause of action does not accrue until the plaintiff's conviction is overturned." *Id.* at 1240. The court reasoned that "a plaintiff must prove his innocence before he may recover for his criminal defense attorney's malpractice," but "he is collaterally estopped from arguing facts established and issues decided in a criminal proceeding. . . . Thus, before a plaintiff's conviction is overturned, the plaintiff is collaterally estopped from arguing his innocence, leaving him with no cause of action." *Id.* at 1239 (internal quotation marks and citations omitted).

The court in *Griffin* then turned to the parties' dispute over the date upon which the plaintiff's conviction was "overturned." The Illinois Appellate Court agreed with the plaintiff that the relevant date was September 27, 1996, the date of this court's final mandate. After noting that "a reviewing court's judgment overturning a plaintiff's conviction may be reversed by another court," the court determined that, "[b]ecause of the policy reasons underlying the unique nature of legal malpractice claims arising out of criminal proceedings, a cause of action accrues when the reviewing court gives a final mandate that is not stayed pending an appeal to another court." *Id.* at 1240-41 (internal quotation marks and citations omitted). The court reasoned that a legal malpractice plaintiff is injured "when he has suffered a loss for which he may seek damages," and until this court issued its final mandate, the plaintiff's damages were speculative. *Id.* at 1241.

Relying principally on *Griffin*, the district court in the case now before us held that "Woidtke's legal malpractice claim accrued, if ever, on May 11, 2000," the date upon which the Appellate Court of Illinois had issued its final

mandate overturning his conviction and remanding the case for a new trial. R.36 at 5. The district court reasoned that "[w]hen a plaintiff's conviction is overturned by a final appellate mandate, all of the elements of his legal malpractice claim exist, and a plaintiff may then bring suit, as collateral estoppel can no longer be used to preclude him from proving facts establishing his innocence." *Id.* Because Mr. Woidtke filed his action against the defendants on March 29, 2002, more than one year after the cause of action accrued, the court concluded that his complaint was untimely.

In evaluating the analysis of the district court, we begin by noting that the district court employed the correct methodology in approaching the issue before it. Faced with the task of interpreting a state statute in the absence of a pronouncement from the state's highest court, the district court, following our decision in *Allstate*, looked to the decisions of the state intermediate appellate court for guidance. Although these decisions arise in somewhat different procedural contexts and, standing alone, do not provide a direct answer to the issue in this case, the district court discerned correctly that they do provide meaningful guidance on the approach that Illinois has chosen to take to this problem. Both of these cases suggest a common theme: An existing conviction prevents the plaintiff in a malpractice case from asserting that he is innocent of the crime for which he was convicted. Until a plaintiff can make such an assertion and go on to establish, by a preponderance of the evidence, that he is innocent of the crime, he simply does not have a viable cause of action for malpractice.

In discerning this theme in the Illinois case law, the district court did not cull verbiage out of context to support its result. Rather, it recognized in these opinions an approach that is found throughout the Illinois cases

and that this court has noted in our previous decisions. Both Illinois courts and this court have stressed that a successful malpractice action requires that the plaintiff affirmatively establish that he is innocent of the crime charged. *See Moore v. Owens*, 698 N.E.2d 707, 709 (Ill. App. Ct. 1998); *Kramer v. Dirksen*, 695 N.E.2d 1288, 1290 (Ill. App. Ct. 1998); *see also Levine v. Kling*, 123 F.3d 580, 582 (7th Cir. 1997). It is the existence of an outstanding conviction, not the absence of a subsequent acquittal, that prevents the plaintiff from maintaining that he is actually innocent. Indeed, a subsequent verdict of not guilty, although some evidence of innocence, is not sufficient to carry the burden of establishing actual innocence in a malpractice action. *See Moore*, 698 N.E.2d at 709; *see also Levine*, 123 F.3d at 583.

The district court therefore correctly declined to accept Mr. Woidtke's view, repeated before us, that the state's election to refrain from retrying the plaintiff in *Griffin* was integral to the Illinois Appellate Court's determination of the date upon which his tort claim accrued. *See* Appellant's Br. at 15. Mr. Woidtke's submission that a malpractice action against a criminal defense attorney does not accrue until the criminal proceedings against the plaintiff have been terminated cannot, in our view, be reconciled with the approach of the Illinois courts. It is true, as Mr. Woidtke points out, that the plaintiff in *Griffin* was not retried, and that therefore the criminal proceedings actually terminated when we issued our final mandate. However, as the district court pointed out, the Illinois court in *Griffin* "did not condition [its] holding on the State's choice not to retry Griffin, nor did the court hold that the cause of action would have accrued on a different date had the State elected to retry Griffin." R.36 at 6. We agree that the Illinois court did not indicate that its holding was dependent upon the state's decision not

to retry the plaintiff. That court could have held that the plaintiff's cause of action accrued when the state decided not to retry him and he was released.[3] Rather, the court indicated that its primary reason for adopting the rule that the malpractice cause of action accrues at the time of the vacation of the conviction was to overcome the problem of collateral estoppel. Once the plaintiff's conviction is overturned, collateral estoppel no longer operates to preclude the plaintiff from proving his innocence.

We are aware that other states have chosen a different approach and require that the malpractice plaintiff wait until the termination of the criminal proceedings. *See Britt v. Legal Aid Soc'y, Inc.*, 741 N.E.2d 109 (N.Y. 2000). In *Britt*, the plaintiff pleaded guilty to attempted rape. On September 30, 1994, the trial court vacated Britt's guilty plea and remanded the case for further proceedings. The plaintiff was released from prison on December 27, 1994, and on March 7, 1996, the indictment against him was dismissed. The New York Court of Appeals held that the plaintiff's cause of action did not accrue until the indictment against him was dismissed. *See id.* at 113. The court reasoned that "[v]acatur of the conviction and remand of the matter to the trial docket did not signal the accrual of Britt's cause of action for Britt's criminal liability was still in doubt. A conviction on the indictment remained possible and would serve to bar his malpractice claim anew." *Id.* at 112; *see also Glaze v. Larsen*, 55 P.3d 93, 97 (Ariz. Ct. App. 2002) ("[T]he harm to the aggrieved party is

---

[3] In its rendition of the facts, the court in *Griffin* specifically stated that we had issued our final mandate on September 27, 1996, and that the plaintiff was released from prison on October 9, 1996.

uncertain until the termination of criminal proceedings because the criminal defendant is not harmed by his or her attorney's malpractice if the defendant is properly convicted after a new trial.").

The rule advocated by Mr. Woidtke and adopted by New York and Arizona may have policy reasons to recommend it, including principles of judicial economy. If a plaintiff files suit against his former counsel and then is subsequently convicted, his cause of action must fail. Such a rule also would permit a more focused assessment of damages.

On the other hand, the Illinois approach is not without force. The necessary elements of a malpractice action exist once the conviction is overturned; collateral estoppel no longer operates to preclude the plaintiff from asserting his innocence. *See Levine*, 123 F.3d at 583 ("[B]y operation of the doctrine of collateral estoppel, a valid criminal conviction acts as a bar to overturning that conviction in a civil damages suit," but "[s]hould he succeed in getting his conviction overturned, he can bring a new malpractice suit."). Moreover, the fact that Mr. Woidtke eventually was acquitted does not establish his innocence; to prevail on his malpractice claim, he must prove his actual innocence by a preponderance of the evidence. *See Moore*, 698 N.E.2d at 709 ("We do not believe that even if a criminal defendant is acquitted on retrial, that alone will suffice as proof of innocence, although it may be evidence for a fact-finder to consider.").[4]

---

[4] As to damages, it is certainly possible to conclude that damages are no longer speculative once the plaintiff's conviction is overturned. Although the possibility that a second trial might result in conviction is always present, we note that Illinois

(continued...)

Put simply, all the necessary elements for Mr. Woidtke's cause of action were present once his conviction was overturned. Of course, the possibility remained that he would be retried and convicted, but had he filed suit, the court concerned by issues of judicial economy, could have stayed the malpractice proceedings pending a final resolution of the criminal case.

**Conclusion**

The district court followed the appropriate methodology and correctly determined that Mr. Woidtke's claims are

---

[4] (...continued)
has accepted the analogous risk in malpractice cases arising from civil actions. These cases hold that the statute of limitations begins to run from the date of the initial adverse judgment, not from the denial of post-trial motions. *See Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1140 (Ill. 1995) (holding that cause of action accrued when circuit court entered order substantially reducing mechanic's lien, even though the court could have reconsidered its decision); *Belden v. Emmerman*, 560 N.E.2d 1180, 1182-83 (Ill. App. Ct. 1990) (holding that cause of action accrued when trial court entered the order that was the subject of the legal malpractice action, not when appellate court affirmed trial court's order); *Zupan v. Berman*, 491 N.E.2d 1349, 1351-52 (Ill. App. Ct. 1986) (holding that statute of limitations commenced on date trial court entered judgment adverse to plaintiff, rather than date plaintiff's post-trial motions were denied). The Supreme Court of Illinois has warned that, were it otherwise, "the statute of limitations could be postponed indefinitely until all avenues of appeal in the earlier suit were exhausted." *Hermitage*, 651 N.E.2d at 1139.

barred by the applicable statute of limitations.[5] Accordingly, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*

---

[5] Because we determined that the applicable statute of limitations bars Mr. Woidtke's claims, it is unnecessary to determine the applicability of the statute of repose or the additional defenses asserted by individual defendants.

---