# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Catom Trucking, Inc. v. City of Chicago*, 2011 IL App (1st) 101146

| | |
|---|---|
| Appellate Court Caption | CATOM TRUCKING, INC., RICHARD MCDONALD, TOM STELLMAN, and CHAD STANKO, Plaintiffs-Appellants, v. THE CITY OF CHICAGO, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1–10–1146 |
| Filed | June 10, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The City of Chicago's department of administrative hearings lacks jurisdiction over violations of municipal-ordinance offenses arising from overweight truck loads, as the provisions of the ordinance are sufficiently similar to provisions of the Motor Vehicle Code to prohibit use of administrative hearings for adjudications under section 1–2.1–2 of the Illinois Municipal Code, and although a bond is authorized by the city's ordinance, detention of overweight vehicles in lieu of a bond is not authorized by city ordinance, but the city may use nonpolice officers to enforce its weight regulations. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07–CH–1228; the Hon. LeRoy K. Martin, Jr., Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

Counsel on
Appeal

Bernard K. Weiler, of Mickey, Wilson, Weiler, Renzi & Andersson, P.C., of Chicago, for appellants.

Mara S. Georges, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Kerrie Maloney Laytin, Assistant Corporation Counsel, of counsel), for appellee.

Panel

JUSTICE EPSTEIN delivered the judgment of the court, with opinion.

Presiding Justice Fitzgerald Smith and Justice J. Gordon concurred in the judgment and opinion

## OPINION

¶ 1    Catom Trucking, Inc. (Catom), its owner and principal, Tom Stellman, and two of its professional drivers, Richard McDonald and Chad Stanko, challenge in their second amended complaint (the Complaint) certain procedures and regulations allegedly adopted by the City of Chicago (the City) in furtherance of chapter 9–72 of the City's Municipal Code (the City Code) (Chicago Municipal Code, ch. 9–72). Chapter 9–72 regulates size and weight limits on the City's roadways, and plaintiffs frequently transport overweight loads. The trial court dismissed two of plaintiffs' six claims (counts II and V) and granted the City summary judgment on the remainder of the Complaint. Plaintiffs appeal all but the dismissal of count V. For the reasons below, we reverse in part, affirm in part, and remand for further proceeding.

¶ 2                                   BACKGROUND

¶ 3    Catom is a named defendant in two cases involving sections 9–72–070 and 9–72–080 of the City Code (Chicago Municipal Code § 9–72–070 (amended Nov. 15, 2006); § 9–72–080 (amended Dec. 7, 2005)) that were tried by the City's department of administrative hearings (the Department). Section 9–72–070 governs special permits for overweight vehicles and 9–72–080 addresses weight limitations, violations, and penalties. Catom is charged with violations under each section.

¶ 4    In count I of the Complaint, filed during the pendency of the Department's proceeding, Catom seeks a declaration that the Department lacks jurisdiction over Catom's claims because section 1–2.1–2 of the Illinois Municipal Code (the Administrative Adjudication Statute) (65 ILCS 5/1–2.1–2 (West 2008)) allegedly bars administrative adjudication of those claims. Count II is a request for a declaration that the City's permit requirements are invalid. Catom alleges that although the City requires a local permit for "trucks on State Route 38 within the City of Chicago, to the extent that the weight of the vehicle exceed 73,600 lbs," such a permit is not required because Route 38 falls within the jurisdiction of the state and

not the City.

¶ 5    McDonald and Stanko claim in counts III and VI that they were improperly stopped and detained by employees of the City's department of consumer services. According to McDonald:

> "On August 1, 2006, October 12, 2005, and some other occasions, the City's uniformed truck enforcement agents used vehicles with rotating flashing lights and red flags to stop the vehicle driven by McDonald and, upon stopping him, presented themselves to him, representing that they had the authority to stop the vehicle and to detain him, weigh his vehicle, and hold him until such time as bond was posted and until such time as they, in their discretion, advised him that he was free to go."

Stanko alleges a similar experience and maintains, along with McDonald, that the City cannot use nonpolice officers to make traffic stops or detain overweight vehicles.

¶ 6    Catom seeks a declaration in count IV that neither the City Code nor the state's statutes authorize the City's alleged requirement that "trucks which are found to be overweight in operation on the streets of the City of Chicago *** post bond in order to remove their vehicles." The trial court rejected all of plaintiffs' claims, summarily dismissing count II with prejudice and granting the City summary judgment on counts I, III, IV, and VI. Plaintiffs appeal, contending count II states a claim for relief and that summary judgment should have been granted in their favor and against the City on counts I, III, IV, and VI.

¶ 7                                    ANALYSIS

¶ 8                 I. Catom Is Entitled to Summary Judgment on Count I

¶ 9    Summary judgment is intended to determine whether triable issues of fact exist and "is appropriate where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333 (1996). "When, as in this case, parties file cross-motions for summary judgment, they concede the absence of a genuine issue of material fact and invite the court to decide the questions presented as a matter of law." *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005). "On appeal, our standard of review is *de novo*; and we may affirm the trial court's grant of summary judgment on any ground apparent from the record." *Fan v. Auster Co.*, 389 Ill. App. 3d 633, 648 (2009).

¶ 10   "As a general rule, a party who is aggrieved by administrative action cannot seek relief in the courts without first pursuing all administrative remedies available to him." *Walker v. State Board of Elections*, 65 Ill. 2d 543, 551-52 (1976). One exception lies "where the agency's authority or jurisdiction is challenged." *Midland Enterprises, Inc. v. City of Elmhurst*, 226 Ill. App. 3d 494, 501 (1993). Here, Catom maintains the Administrative Adjudication Statute strips the Department of jurisdiction over Catom's claims. We agree.

¶ 11   The City, as a home rule unit, "possess the same powers as the state government, except

where such powers are limited by the General Assembly." *Johnson v. Halloran*, 194 Ill. 2d 493, 496-97 (2000). The City "may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, § 6(i). Catom maintains here that the Administrative Adjudication Statute limits the Department's authority. The statute provides:

> "Any municipality may provide by ordinance for a system of administrative adjudication of municipal code violations to the extent permitted by the Illinois Constitution. A 'system of administrative adjudication' means the adjudication of any violation of a municipal ordinance, except for (i) proceedings not within the statutory or the home rule authority of municipalities; and (ii) any offense under the Illinois Vehicle Code [(625 ILCS 5/1–100 *et seq.* (West 2008))] or a similar offense that is a traffic regulation governing the movement of vehicles and except for any reportable offense under Section 6–204 of the Illinois Vehicle Code [(625 ILCS 5/6–204 (West 2008))]." 65 ILCS 5/1–2.1–2 (West 2008).

It is undisputed here that Catom's alleged violations of the City Code are not reportable under section 6–204. Nevertheless, Catom maintains those alleged violations fall within subsection (ii) of the statute because they are "identical to the offenses defined in the Illinois Vehicle Code and *** are traffic regulations governing the movement of vehicles over the public roadways." The City responds that its ordinances differ from the Illinois Vehicle Code (Vehicle Code); that Catom is misreading subsection (ii); and that, even if Catom's interpretation is correct, sections 9–72–070 and 9–72–080 "do not govern the movement of vehicles." We will address each in turn.

¶ 12          A. Sections 9–72–070 and 9–72–080 Are Similar to the Vehicle Code

¶ 13     Section 9–72–070 allows the executive director of the City's Office of Emergency Management and Communications to

> "issue a special permit authorizing a vehicle or combination of vehicles not in conformity with the size regulations of th[at] chapter or the wheel and axle load and gross weight provisions of Section 15–111 of the Illinois Vehicle Code [(625 ILCS 5/15–112 (West 2008))], to be operated or moved upon any street or highway under the jurisdiction of the city." Chicago Municipal Code § 9–72–070(a)(1).

Section 9–72–070 mandates, in relevant part:

> "(e) Every permit issued under this section shall be carried in the vehicle to which it refers and shall be produced for inspection upon request by any police officer or any other authorized agent of the city. If a permit is not produced upon request, the person operating the vehicle shall be deemed as operating the vehicle and its load without a permit in violation of this section.
>
> (f) It shall be unlawful for any person issued a permit under this section, or any employee or agent of such person, to violate any of the terms or conditions of the permit." *Id.* §§ 9–72–070(e), (f).

These provisions are similar to section 15–301 of the Vehicle Code. It, too, authorizes the issuance of special permits and mandates that "[e]very permit shall be *** carried in the vehicle or combination of vehicles to which it refers and shall be open to inspection by any police officer or authorized agent of any authority granting the permit and no person shall violate any of the terms or conditions of such special permit." 625 ILCS 5/15–301(a), (f) (West 2008).

¶ 14    As for section 9–72–80, it provides, in relevant part:

> "(a) Except as specifically allowed by statute or other ordinance, no person shall operate on any public way within the city any motor vehicle whose gross weight exceeds the limits described in Section 15–111 of the Illinois Motor Vehicle Code. The weight limitations and formulae contained in Section 15–111 of the Illinois Motor Vehicle Code are hereby incorporated by reference for purposes of calculating permissible weights under this section.
>
> (b) Any person who refuses or fails to stop and submit his or her vehicle and load after being directed to do so by an authorized agent of the city, or who removes or causes the removal of any portion of the load prior to weighing, shall be fined not less than $500.00 and not more than $2,000.00.
>
> ***
>
> (d) Whenever any vehicle is operated in violation of the provisions of this section, the owner or driver of the vehicle shall be jointly and severally liable for the violation.
>
> (e) Penalties for any violation of this section shall be in addition to any penalties imposed for the violation of any other section of this chapter." Chicago Municipal Code §§ 09–72–080(a), (b), (d), (e).

These provisions are similar to section 15–112 of the Vehicle Code, which provides:

> "Any driver of a vehicle who refuses to stop and submit his vehicle and load to weighing after being directed to do so by an officer or removes or causes the removal of the load or part of it prior to weighing is guilty of a business offense and shall be fined not less than $500 nor more than $2,000." 625 ILCS 5/15–112(g) (West 2008).

Also similar is section 15–113(a): "Whenever any vehicle is operated in violation of the provisions of Section 15–111 or subsection (d) of Section 3–401, the owner or driver of such vehicle shall be deemed guilty of such violation and either the owner or the driver of such vehicle may be prosecuted for such violation." 625 ILCS 5/15–113(a) (West 2008). Catom's alleged violations under sections 9–72–70 and 9–72–080 of the City Code are similar, though not identical, to offenses under the Vehicle Code.

¶ 15    B. Catom's Interpretation of the Administrative Adjudication Statute Is Correct

> "The primary rule of statutory construction is to ascertain and give effect to the true intent of the legislature. To determine the legislative intent, a court should first consider the statutory language, and where the language is clear, it will be given effect without resort to other aids for construction. [Citation.] The court must

examine the language of the statute as a whole and consider each part or section in connection with every other part or section." *People v. Picou*, 260 Ill. App. 3d 692, 694-95 (1994).

"We must construe the statute so that each word, clause, or sentence is given reasonable meaning and not deemed superfluous or void." *Quad Cities Open, Inc. v. City of Silvis*, 208 Ill. 2d 498, 508 (2004). The statute here prohibits the administrative adjudication of "any offense under the Illinois Vehicle Code or a similar offense that is a traffic regulation governing the movement of vehicles and except for any reportable offense under Section 6–204 of the Illinois Vehicle Code." 65 ILCS 5/1–2.1–2 (West 2008). The City argues that "this exclusion prohibits administrative adjudication of citations for municipal offenses that are similar to the ones prohibited in the Illinois Vehicle Code and that are both 'traffic regulation[s] governing the movement of vehicles' and 'reportable offense[s] under Section 6–204 of the Illinois Vehicle Code.' " This interpretation renders superfluous the words "except for any" in the last sentence of subsection (ii). Had the legislature intended the meaning advanced by the City, it simply could have stated "any offense under the Illinois Vehicle Code or a similar offense that is a traffic regulation governing the movement of vehicles and \*\*\* reportable \*\*\* under Section 6–204 of the Illinois Vehicle Code." See 65 ILCS 5/1–2.1–2(ii) (West 2008). It did not.

¶ 16     The proper reading of subsection (ii) is that it excludes "any offense under the Illinois Vehicle Code or a similar offense that is a traffic regulation governing the movement of vehicles," as well as "any reportable offense under Section 6–204 of the Illinois Vehicle Code." This reasonably construes all the words in subsection (ii) and it recognizes that not every violation of the Vehicle Code or similar ordinance governing the movement of vehicles is a reportable offense. See, *e.g.*, 625 ILCS 5/6–204(2) (West 2008) ("Whenever any person is convicted of any offense under this Code or similar offenses under a municipal ordinance, other than regulations governing standing, parking or weights of vehicles, and excepting the following enumerated Sections of this Code: \*\*\* 11–1410 (coasting on downgrade), \*\*\* and also excepting the following enumerated Sections of the Chicago Municipal Code: \*\*\* 27–259 (coasting on downgrade), \*\*\* it shall be the duty of the clerk of the court in which such conviction is had within 5 days thereafter to forward to the Secretary of State a report of the conviction and the court may recommend the suspension of the driver's license or permit of the person so convicted.").

¶ 17          C. Sections 9–72–070 and 9–72–080 Regulate the Movement of Vehicles

¶ 18     The City maintains that sections 9–72–070 and 9–72–080 "do not in fact regulate 'the movements of vehicles,' 65 ILCS 5/1–2.1–2, because they specifically prohibit the 'operat[ion],' not 'movement,' of overweight vehicles, Municipal Code of Chicago, Ill. §§ 9–72–070(a), –080(a)." This position is not supported, however, by the actual language of section 9–72–070:

"The executive director may, upon application in writing and good cause being shown, issue a special permit authorizing a vehicle or combination of vehicles not in conformity with the size regulations of this chapter or the wheel and axle load and

gross weight provisions of Section 15–111 of the Illinois Vehicle Code, to be operated *or moved upon* any street or highway under the jurisdiction of the city." (Emphasis added.) Chicago Municipal Code § 9–72–070(a)(1).

The City's position is further belied by the fact that its own municipal code defines Catom's alleged violations under sections 9–72–070 and 9–72–080 as "traffic violations":

> " 'Traffic' means pedestrians, ridden or herded animals, bicycles, vehicles, and other conveyances either singly or together while using any public way *for purposes of travel*.
>
> * * *
>
> 'Traffic violation' means a violation of the provisions of Chapter 9–4 through 9–100, other than a standing or parking violation." (Emphasis added.) Chicago Municipal Code § 9–4–010 (eff. Feb. 11, 2009).

The claims here do not involve a parking or standing violation:

> " 'Parking (to park)' means the standing of an unoccupied vehicle otherwise than temporarily for the purpose of and while actually engaged in loading or unloading property or passengers.
>
> * * *
>
> 'Standing (to stand)' means the halting of a vehicle, whether occupied or not, otherwise than temporarily for the purpose of and while actually engaged in receiving or discharging passengers; provided, that, an operator is either in the vehicle or in the immediate vicinity, so as to be capable of immediately moving the vehicle at the direction of a police officer or traffic control aide." *Id.*

Sections 9–72–070 and 9–72–080 are clearly traffic regulations governing the movement of vehicles. See Chicago Municipal Code § 9–4–030 (2006) ("Chapters 9–4 through 9–100 of the Municipal Code of Chicago shall be known and may be cited as 'the traffic code.' "). That, as the City now argues, stationary vehicles may also violate these ordinances is inconsequential. Catom's alleged violations under sections 9–72–070 and 9–72–080, which are moving violations, cannot be administratively adjudicated. We reverse the trial court's summary judgment order on count I. The Department lacks jurisdiction.

¶ 19                    II. Count II States a Claim for Declaratory Relief

¶ 20      In July 2007 the trial court summarily granted the City's motion to dismiss count II with prejudice. While the City originally moved to dismiss count II pursuant to both sections 2–615 and 2–619 of the Illinois Code of Civil Procedure (735 ILCS 5/2–615, 2–619 (West 2008)), it subsequently withdrew its section 2–619 arguments, relying only on section 2–615.

> "A motion to dismiss under section 2–615 attacks only the legal sufficiency of the complaint. [Citation.] Such a motion does not raise affirmative factual defenses, as does a motion under section 2–619 of the Code, but rather alleges only defects on the face of the complaint. [Citation.] The question presented by a motion to dismiss under section 2–615 is whether sufficient facts are contained in the pleadings which, if proved, would entitle the plaintiff to relief. [Citation.] The only matters to be

considered in ruling on such a motion are the allegations of the pleadings themselves." *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475 (1991).

"A dismissal under either section 2–615 or section 2–619 is reviewed *de novo*." *Zahl v. Krupa*, 365 Ill. App. 3d 653, 658 (2006).

¶ 21     Catom maintains in count II that the City may not mandate city permits for overweight vehicles traveling on State Route 38 because Route 38 is within the jurisdiction of the state and not the City. The City responds that it need not have jurisdiction over State Route 38 because the state has not preempted the City's "home-rule authority to regulate the weight of vehicles on state roads within the City's borders," and "if the City needed specific authority to regulate overweight vehicles traveling over state roads, it is conferred by a regulation of the Illinois Department of Transportation." We need not address these contentions, however, for the City's permit ordinance, section 9–72–070, is not that broad.

> "In construing an ordinance, the same rules employed in statutory construction apply. [Citation.] Effect should be given to the drafter's intention as evidenced by the terminology used, the goals and purposes, the natural import of the words used in common and accepted usage, and the general, structure of the ordinance. [Citation.] Finally, a court should not adopt a construction that renders words or phrases superfluous." *County of Montgomery v. Deer Creek, Inc.*, 294 Ill. App. 3d 851, 856 (1998).

Here, section 9–72–070 provides, in relevant part:

> "(a)(1) The executive director may, upon application in writing and good cause being shown, issue a special permit authorizing a vehicle or combination of vehicles not in conformity with the size regulations of this chapter or the wheel and axle load and gross weight provisions of Section 15–111 of the Illinois Vehicle Code, to be operated or moved upon any street or highway *under the jurisdiction of the city*. \*\*\*

> (2) The executive director may, upon application in writing and good cause being shown, issue a special annual permit authorizing a vehicle or combination of vehicles not in conformity with the size regulations of this chapter or the wheel and axle load and gross weight provisions of Section 15–111 of the Illinois Vehicle Code to operate in the following designated industrial truck corridor \*\*\* [not including Route 38].

> The permit shall authorize the operation of a vehicle, whose total gross weight is equal to or less than 160,000 pounds, within the designated industrial truck corridor for the purpose of delivery or pick up of materials. The movement and operation of any vehicle within the designated truck corridor whose: (i) total gross weight is greater than 160,000 pounds; or (ii) movement and operation is for purposes other than for delivery [or] pick up of materials or merchandise within the designated industrial truck corridor shall be subject to the provisions of subsection (a)(1) of this section." (Emphasis added.) Chicago Municipal Code § 9–72–070(a).

As subsection (1) of section 9–72–070(a) is unambiguously limited to roadways within the City's jurisdiction, and Route 38 is not within the roadways enumerated under subsection (2), it is irrelevant, at least for purposes of plaintiff's claim in count II, whether, as the City

argues, it has authority to regulate roadways outside its jurisdiction. Count II states a claim for declaratory relief. See *Young v. Mory*, 294 Ill. App. 3d 839, 845 (1998) ("In order to state a cause of action for declaratory judgment, a plaintiff must allege (1) that he has a tangible legal interest with regard to the claim, (2) that the defendant's conduct is opposed to that interest, and (3) that there is an ongoing controversy between the parties that is likely to be prevented or resolved if the court decides the case."). We reverse the trial court's dismissal of count II. The issue of who actually has jurisdiction over Route 38, while addressed in plaintiffs' brief here, is outside the scope of section 2–615.

¶ 22    III. The Trial Court's Summary Judgment Order on Counts III and VI Is Affirmed

¶ 23    Stanko and McDonald claim in counts III and VI that the City cannot use nonpolice officers to enforce its weight regulations because "[t]he authority to make traffic stops and to detain drivers of vehicles is exclusively vested in sworn police officers" by section 15–112 of the Vehicle Code. We disagree.

¶ 24    Again, the City, as a home rule unit, "possess[es] the same powers as the state government, except where such powers are limited by the General Assembly." *Johnson*, 194 Ill. 2d at 496-97. Such a limitation will not be inferred, however; the "legislation must contain express language that the area covered by the legislation is to be exclusively controlled by the State." *Village of Bolingbrook v. Citizens Utilities Co. of Illinois*, 158 Ill. 2d 133, 138 (1994). "It not enough that the State comprehensively regulates an area which otherwise would fall into home rule power." *Id.* Here, section 15–112 provides, in relevant part:

> "Officers to weigh vehicles and require removal of excess loads.
>
>     (a) Any police officer having reason to believe that the weight of a vehicle and load is unlawful shall require the driver to stop and submit to a weighing of the same either by means of a portable or stationary scales that have been tested and approved at a frequency prescribed by the Illinois Department of Agriculture, or for those scales operated by the State, when such tests are requested by the Department of State Police, whichever is more frequent." 625 ILCS 5/15–112(a) (West 2008).

This provision does not expressly bar the City from regulating overweight vehicles on its roadways nor does it preclude the City from authorizing nonpolicers officers to enforce the City's weight ordinances. *People v. Industrial Salvage, Inc.*, 136 Ill. App. 3d 1068, 1072 (1985), cited by plaintiff in support of a contrary conclusion, is inapposite. There, this court held that although a stop "as contemplated under section 15–112(a) of the Illinois Vehicle Code is not *** an arrest," our "legislature has limited stops for temporary questioning to police officers and that it was not a power that the legislature intended to put into the hands of a private citizen. Ill. Rev. Stat. 1983, ch. 38, par. 107–14 [(now 725 ILCS 5/107–14 (West 2008))]." 136 Ill. App. 3d at 1072. *Industrial Salvage* is distinguishable, however, because it involved a violation of the Vehicle Code not a municipal ordinance. *Id.* at 1069. Moreover, there, unlike in this case, the government actor did not purport to be exercising municipal authority. Here, plaintiffs acknowledge the City's agents claimed such authority and that "[a]t no time *** [were Stanko and] McDonald ever investigated for the violation of any law,

-9-

other than the violation of the City of Chicago ordinance as it pertained to the operation of trucks on the streets of the City of Chicago." *Industrial Salvage* is inapposite.

¶ 25 According to plaintiffs, however, the City may not use nonpolice officers to enforce its ordinances because such use allegedly violates the Illinois Police Training Act (50 ILCS 705/1 *et seq.* (West 2008)), as well as section 107–3 of the Illinois Code of Criminal Procedure of 1963 (725 ILCS 5/107–3 (West 2008)). We need not address these contentions, however, for plaintiffs have not pled either statute in the Complaint. "A plaintiff fixes the issues in controversy and the theories upon which recovery is sought by the allegations in her complaint. [Citation.] It is a fundamental rule, with no exceptions, that a party must recover on and according to the case she has made for herself by her pleadings." *Kincaid v. Ames Department Stores, Inc.*, 283 Ill. App. 3d 555, 568 (1996). "A party cannot seek summary judgment on a theory that was never pled in the complaint." *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 373 Ill. App. 3d 895, 900 (2007); *Gold Realty Group Corp. v. Kismet Café, Inc.*, 358 Ill. App. 3d 675, 680 (2005) ("In deciding a motion for summary judgment, the court considers the pleadings to determine what the issues are and in so doing it presupposes that the pleadings join the issue."). The only properly pled claim in count III is that section 15–112 precludes the City from authorizing nonpolice officers to stop and/or detain drivers of overweight vehicles. As it does not, we affirm the trial court's summary judgment order on counts III and VI. This is not to say, however, that the City's agents acted properly. We simply hold that the basis relied on by plaintiffs in counts III and VI to challenge the agents' conduct is unavailing.

¶ 26 IV. The Trial Court's Summary Judgment Order on Count IV
Is Affirmed in Part and Reversed in Part

¶ 27 Catom maintains in count IV that neither the City's ordinances nor the state's statutes "authorize[ ] the detention of overweight vehicles after weighing or requir[e] the owners of trucks to post bond when found to be overweight." The City argues, as an initial matter, that the court lacks subject matter jurisdiction to address Catom's claims in count IV. While the City did not raise this issue below, we will nevertheless address it for subject matter jurisdiction may be challenged "at any time and may even be raised *sua sponte* by a reviewing court." *Ruff v. Splice, Inc.*, 398 Ill. App. 3d 431, 435 (2010). The City maintains this court lacks jurisdiction because "Count 4 of [plaintiffs'] second amended complaint alleges that the incidents at issue were set for trial before DOAH [the Department]." According to the City:

> "DOAH has rendered its decision, and plaintiffs have sought review in the circuit court[, in a separate action,] pursuant to the Administrative Review Law. [Citation.] That action allows plaintiffs to make their claim that the actions of City investigators exceeded their authority under the City's ordinances and that they agency's ruling is contrary to the law. [Citation]. It is well settled that when the Administrative Review law is applicable and provides a remedy, the circuit courts have no authority to hear the claim through any other type of action."

This arguments fails, however, for Catom has not alleged in count IV that it challenged, or

could challenge, the detention of its vehicle(s) before the Department. There is no allegation in count IV that Catom's citations in the pending administrative review cases arose from the removal of a detained vehicle, as opposed to, for example, an alleged failure to post the requisite monetary bond under the ordinance. To the contrary, Catom has alleged that in each of the actions before the circuit court, "the vehicles of Catom had been stopped by employees of the City of Chicago Department of Consumer Services and retained until such time as Catom posted bond for the release of said vehicles." The City has not demonstrated that Catom's claim regarding the detention of its vehicles is a matter pending in the administrative proceeding.

¶ 28    As for the merits of count IV, the City argued before the trial court that it is entitled to summary judgment because "[t]he *sole* question raised by Count IV is whether the City has legal authority to require drivers who are cited for violating the City's overweight vehicle ordinances to post a bond in an amount equal to the amount of the citation before department" (emphasis in original), and section 9–72–090(a) expressly authorizes a bond:

> "A person issued a notice for a violation of any weight limitations imposed by this chapter, or any term or condition of a permit issued under Section 9–72–070, shall, upon issuance of the citation, deposit with the city a bond in the form of a money order *** in an amount equal to the minimum fine established for such violation." Chicago Municipal Code § 9–72–090(a) (amended Nov. 19, 2008).

Catom responded by conceding the City's authority to require a bond, but reasserted that the City's requirement "that a vehicle not be moved until a bond is posted" was invalid. According to Catom, "nothing in the City's statutes authorize[s] the City to impound a vehicle or to prohibit an owner from recovering it. *** The ordinances do not permit the City to confiscate property of another and to hold it ransom for that bond." While the City challenged Catom's use of the term "impounded," it did not address the merits of Catom's claim. The trial court nevertheless granted the City summary judgment on count IV, in its entirety, denying Catom's cross-motion. We reverse in part. While the City's ordinance clearly authorizes a bond, it does not authorize the City to detain overweight vehicles in lieu of a bond. The City did not even make such a claim in its submissions for summary judgment.

> "[A] party moving for summary judgment need not prove its case or disprove the nonmovant's case. [Citation.] Rather, the movant is entitled to summary judgment where it can demonstrate the absence of a genuine issue of material fact. [Citation.] The nonmoving party may defeat a claim for summary judgment by demonstrating that such a question of material fact exists. [Citation.] Although the nonmoving party also need not prove his case at the summary judgment stage, he must come forth with some evidence that arguably would entitle him to recover at trial." *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 472 (2010).

While it is undisputed here that the City's agents informed plaintiffs they could not depart without posting a bond, the City proffers no statute or ordinance authorizing such conduct. Catom is entitled to summary judgment on that portion of count IV. We reverse the trial court's contrary ruling and affirm the bond requirement.

¶ 29                               CONCLUSION

¶ 30        We reverse the trial court's orders on counts I and II. The Department lacks jurisdiction to adjudicate Catom's alleged violations under sections 9–72–070 and 9–72–080. Count II states a claim for relief. We affirm the trial court's summary judgment orders on counts III and VI. Section 15–112 of the Vehicle Code does not preclude the City from authorizing nonpolice officers to stop or detain overweight vehicles. As for count IV, we affirm in part and reverse in part. While the City Code requires a bond, there is no evidence of a statute or ordinance authorizing city employees to detain overweight vehicles in lieu of a bond. We remand with directions to vacate the summary judgment order on count I and part of count IV, to enter partial summary judgment in Catom's favor on count IV, to vacate the order dismissing count II, and to conduct further proceedings on count II not inconsistent with this opinion.

¶ 31        Affirmed in part and reversed in part; cause remanded.